2005 ME 96

**IRVING PULP & PAPER, LTD.**

v.

**STATE TAX ASSESSOR**

Supreme Judicial Court of Maine.

Argued: March 24, 2005.
Decided: Aug. 9, 2005.

Philip S. Olsen, Esq. (orally), Douglas W. Clapp, Esq., Holland & Knight LLP, Boston, MA, Sarah B. Tracy, Esq., Bernstein Shur, Portland, for plaintiff.

G. Steven Rowe, Attorney General, Thomas A. Knowlton, Asst. Atty. Gen. (orally), Stanley W. Piecuch, Asst. Atty. Gen., Augusta, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, and LEVY, JJ.*

SAUFLEY, C.J.

[¶ 1] Irving Pulp & Paper, Ltd. appeals from a judgment of the Superior Court (Kennebec County, *Marden, J.*) affirming a decision of the State Tax Assessor holding Irving accountable for $826,751.57 in taxes and interest that Irving now disputes. Irving contends that for the tax years 1995 through 1999, the denominator in the applicable tax formulas for apportioning Irving's Maine income should have been calculated on a worldwide basis, rather than applying the denominator appropriate to a "water's edge" analysis. We conclude that the trial court correctly interpreted the denominators in a manner consistent with the intent of the Legislature as expressed in the taxation statutes, and we affirm the judgment.

## I. BACKGROUND

[¶ 2] The parties stipulated to the following facts. Irving is a Canadian corporation engaged in the forestry and stumpage business. During the tax years in question, 1995 to 1999, Irving owned timberland reserves in Maine, but nowhere else in the United States. Irving reported no payroll in Maine and had no employees in Maine or anywhere else in the United States. Its worldwide payroll for those years ranged from $38,887,000 to $77,879,000. It realized income in those years by selling its timberland reserves in Maine, but it did not make sales anywhere else in the United States. From 1995 to 1997, Irving apportioned 100% of its federal taxable income to Maine on each year's tax return.

[¶ 3] In 1999, Irving filed amended returns seeking refunds for each year from 1995 to 1997, adjusting the apportionment factors to use its worldwide property, payroll, and sales figures in the denominators. Those adjustments reduced its total taxable Maine income and in February 2000, Maine Revenue Services refunded $589,544.02 to Irving, which included interest. For the 1998 and 1999 tax years, Irving apportioned its income as it had in its amended returns for 1995 through 1997.

[¶ 4] In 2001, Maine Revenue Services audited Irving's tax returns and disallowed its inclusion of worldwide sales, payroll, and property amounts in the denominators of the apportionment factors. The Assessor sent a notice of assessment in July 2001 assessing corporate income tax and interest of $1,049,562.18 for the years 1995 through 1999. To avoid the accrual of interest, Irving paid the full amount, but filed a request for reconsideration, resulting in a July 2002 decision upholding the assessment, but granting a partial abatement of interest totaling $222,810.61. Irving filed a petition for review in the Superior Court in August 2002.

[¶ 5] After briefing by both parties, the court affirmed the decision of the Asses-

---

* Justice Paul L. Rudman sat at oral argument and participated in the initial conference, but retired before this opinion was certified.

sor, reasoning that Irving's proposed interpretation of 36 M.R.S.A. § 5211(9), (12), and (14) (1990)[1] would produce an absurd and illogical result. Taking the statutory subsections in the context of the federal and state tax codes, the court adopted the Assessor's interpretation of the terms "all" and "everywhere" to be understood contextually as all and everywhere in the United States. Specifically, the court reasoned that because the relevant Maine statute apportioned "federal taxable income," 36 M.R.S.A. § 5102(8) (Supp.2004),[2] it was necessary to look to the United States Internal Revenue Code, which provided that a foreign corporation's taxable income was limited to that income connected with its business conducted in the United States, 26 U.S.C.A. § 882(a), (b) (West 2002). Irving timely appealed.

## II. DISCUSSION

 [¶ 6] Each state in the United States may tax and apportion income, subject only to constitutional limits. *Great N. Nekoosa Corp. v. State Tax Assessor*, 675 A.2d 963, 964 (Me.1996). A state violates the Due Process Clause and the Commerce Clause if it taxes " 'value earned outside its borders.' " *Container Corp. of Am. v. Franchise Tax Bd.*, 463 U.S. 159, 164, 103 S.Ct. 2933, 77 L.Ed.2d 545, *reh'g denied*, 464 U.S. 909, 104 S.Ct. 265, 78 L.Ed.2d 248 (1983) (quoting *ASARCO Inc. v. Idaho State Tax Comm'n*, 458 U.S. 307, 315, 102 S.Ct. 3103, 73 L.Ed.2d 787, *reh'g denied*, 459 U.S. 961, 103 S.Ct. 275, 74 L.Ed.2d 213 (1982)). Accordingly, states must apportion the income of multi-jurisdictional corporations for taxation purposes. *See id.* The United States Consti-

tution does not, however, require the states to employ any particular method for achieving fair apportionment of income for tax purposes. *Id.*

[¶ 7] Most states, including Maine, employ a "water's edge" method of reporting, which is ordinarily understood to look only within the geographic boundaries of the United States to determine any factors in the formula for apportioning corporate taxation. *See Barclays Bank PLC v. Franchise Tax Bd. of Cal.*, 512 U.S. 298, 306, 114 S.Ct. 2268, 129 L.Ed.2d 244 (1994); *E.I. DuPont de Nemours & Co. v. State Tax Assessor*, 675 A.2d 82, 83 & n. 3 (Me.1996). Other states have applied a worldwide combined reporting method, which employs worldwide figures in all portions of the apportionment formula. *Barclays Bank PLC*, 512 U.S. at 306, 114 S.Ct. 2268; *E.I. DuPont de Nemours & Co.*, 675 A.2d at 83 n. 3. Irving contends that, because of the language in Maine's apportionment statute, Maine tax laws should be construed as a hybrid of the "water's edge" and the worldwide combined reporting methods for the apportionment of taxation. Irving argues that the Assessor should have determined the apportionment ratio to be applied to Irving's *federal* (that is, United States generated) taxable income based on Maine's share of Irving's *worldwide* property, payroll, and sales figures.

 [¶ 8] The Superior Court declined to accept Irving's argument, holding instead that the water's edge method must be used in both calculations. Because the Superior Court reviews a decision of the Assessor de novo, we review the Superior

---

1. Subsection 12 has since been amended, but the relevant language remains the same. P.L. 2001, ch. 439, § D–8 (effective January 1, 2002) (codified at 36 M.R.S.A. § 5211(12) (Supp.2004)).

2. During the period in question, subsection 8 was amended, but not in a way that affects the issues addressed in this opinion. *See* P.L. 1997, ch. 24, §§ C–9, C–16 (effective January 1, 1997).

Court's statutory interpretation directly as a question of law. *Foster v. State Tax Assessor,* 1998 ME 205, ¶ 7, 716 A.2d 1012, 1014. In interpreting the statute, we "seek to effectuate the intent of the Legislature, which is ordinarily gleaned from the plain language of the statute." *Id.* We must " 'consider[ ] the language in the context of the whole statutory scheme,' " *Jackson Brook Inst., Inc. v. Me. Ins. Guar. Ass'n,* 2004 ME 140, ¶ 9, 861 A.2d 652, 656 (quoting *Darling's v. Ford Motor Co.,* 1998 ME 232, ¶ 5, 719 A.2d 111, 114), and construe the statute to " 'avoid absurd, illogical, or inconsistent results,' " *Estate of Chartier,* 2005 ME 17, ¶ 6, 866 A.2d 125, 127 (quoting *Estate of Jacobs,* 1998 ME 233, ¶ 4, 719 A.2d 523, 524). Only if the language of a statute is ambiguous will we look beyond it to the legislative history or other external indicia of legislative intent. *Me. Family Fed. Credit Union v. Sun Life Assurance Co. of Canada,* 1999 ME 43, ¶ 18 n. 17, 727 A.2d 335, 341.

[¶ 9] We begin, therefore, with the plain language of the statute. Maine adopted its version of the Uniform Division of Income for Tax Purposes Act (UDIT-PA) in 1969. P. & S.L.1969, ch. 154, § F(1). Pursuant to this Act, when determining the taxable income of a multi-jurisdictional corporation during the relevant tax years, the State was required to apportion "[a]ll income ... by multiplying the income by a fraction, the numerator of which [was] the property factor plus the payroll factor plus twice the sales factor, and the denominator of which [was] 4." 36 M.R.S.A. § 5211(8) (Supp.2004). The property, payroll, and sales factors were also calculated pursuant to statutory formulae, which during the relevant time provided:

 **9. Property factor.** The property factor is a fraction, the numerator of which is the average value of the taxpayer's real and tangible personal property owned or rented and used in this State during the tax period and the denominator of which is the average value of *all* the taxpayer's real and tangible personal property owned or rented and used during the tax period.

 . . . .

 **12. Payroll factor.** The payroll factor is a fraction, the numerator of which is the total amount paid in this State during the tax period by the taxpayer for compensation, and the denominator of which is the total compensation paid *everywhere* during the tax period.

 . . . .

 **14. Sales factor formula.** The sales factor is a fraction, the numerator of which is the total sales of the taxpayer in this State during the tax period, and the denominator of which is the total sales of the taxpayer *everywhere* during the tax period.

36 M.R.S.A. § 5211 (emphasis added).

[¶ 10] The statute is susceptible of at least two different meanings. First, the terms "all" and "everywhere" in subsections 9, 12, and 14 could mean all and everywhere in the world. Second, the terms could mean all and everywhere in the United States. Accordingly, the statute is ambiguous and we look beyond the plain language to determine its meaning. *See Me. Family Fed. Credit Union,* 1999 ME 43, ¶ 18 n. 17, 727 A.2d at 341.

[¶ 11] Although there is no pertinent legislative history regarding the adoption of UDITPA, we have stated in the past that UDITPA was "designed to permit states to fairly apportion the income of a multistate corporation in accordance with the distribution of a corporation's property, payroll, and sales." *Great N. Nekoosa Corp.,* 675 A.2d at 964. The goal is "to apportion income so that there is neither

an overlap nor a gap in taxation." *Id.* at 966.

Maine determines what portion of a multijurisdictional corporation's income is apportionable to the corporation's business activity in Maine by using what is commonly referred to as the "water's edge combined reporting method." *See* 36 M.R.S.A. § 5244 (1990). Under this method of reporting and apportionment the state does not look beyond the water's edge—that is, beyond the geographic boundaries of the United States—in determining what activities are appropriately considered part of the unitary business.

*E.I. Du Pont de Nemours & Co.*, 675 A.2d at 83. The water's edge reporting method stands in contrast to the worldwide combined reporting method,

> by which the taxable income of a unitary business is determined for state tax purposes by multiplying the combined income of the worldwide group of a multijurisdictional corporation engaged in the unitary business by the ratio of the unitary business's property, payroll, and sales in a given state to the total property, payroll and sales of the unitary business *everywhere* [,]

including affiliates operating abroad. *Id.* at 83 n. 3 (emphasis added).

[¶ 12] We have explicitly outlined how the apportionment factors are used to calculate corporate income taxes:

> [T]he value of the property used by the unitary business in Maine is divided by the value of the *domestic* property of the unitary business, the amount of sales made by the business in Maine is divided by the sales of the *domestic* unitary business, and the Maine payroll of the business is divided by the payroll of the *domestic* unitary business. 36 M.R.S.A. §§ 5102(8), 5211 (1990). The sum of the property, sales, and payroll factors is

divided by three to yield an apportionment ratio. 36 M.R.S.A. § 5211(8). The Maine net income is then determined by multiplying "that part of the federal taxable income of the entire group which derives from the unitary business" by the apportionment ratio. *See* 36 M.R.S.A. § 5102(8).

*Id.* at 83 (emphasis added). For purposes of this determination, "Maine net income," has consistently meant "the taxable income of that taxpayer for that taxable year under the laws of the United States as modified by section 5200–A ['Modifications'] and apportionable to this State under chapter 821 [UDITPA]." 36 M.R.S.A. § 5102(8). "[T]he Maine net income of a corporation is determined by apportioning that part of the *federal taxable income* of the entire group that derives from the unitary business." *Id.* (emphasis added). Hence, the calculation of the corporate income tax in Maine during the relevant tax years began with the income taxable pursuant to federal law. *Id.; see also* 36 M.R.S.A. § 5243 (Supp.2003), *repealed by* P.L.2003, ch. 588, § 20 (mandating, throughout the 1995 to 1999 tax years, that a corporation must amend its Maine return whenever it files "an amended federal return affecting the taxpayer's liability").

[¶ 13] Since before the tax years in question, the United States Internal Revenue Code has consistently limited taxable income to that income derived from, or sufficiently connected to, the conduct of business in the United States:

**§ 882. Tax on income of foreign corporations connected with United States business**

(a) **Imposition of tax.—**

(1) **In general.**—A foreign corporation engaged in trade or business within the United States during the taxable year shall be taxable ... on

its taxable income which is effectively connected with the conduct of a trade or business *within the United States.*

**(2) Determination of taxable income.**—In determining taxable income for purposes of paragraph (1), gross income includes only gross income which is effectively connected with the conduct of a trade or business *within the United States.*

. . . .

**(b) Gross income.**—In the case of a foreign corporation, except where the context clearly indicates otherwise, gross income includes only—

(1) gross income which is derived from sources within the United States and which is not effectively connected with the conduct of a trade or business *within the United States,* and

(2) gross income which is effectively connected with the conduct of a trade or business *within the United States.*

26 U.S.C.A. § 882 (emphasis added).

[¶ 14] Accordingly, Maine's apportionment statutes contemplate beginning with figures derived from corporations' federal taxable income, *see E.I. Du Pont de Nemours & Co.,* 675 A.2d at 83; 36 M.R.S.A. §§ 5102, 5243, which is limited to income derived from United States business, *see* 26 U.S.C.A. § 882(a), (b). To avoid an absurd result, each figure employed in the formula for determining apportionment must similarly be limited to property, payroll, and sales within the United States.

[¶ 15] This approach is consistent with the approach of other state courts that have addressed whether the denominators of their tax apportionment statutes include worldwide figures.[3] By placing the descriptions of the factors in statutory context, most of these courts have interpreted the property, sales, and payroll factors of their respective apportionment statutes to be limited to domestic, or water's edge, figures. *See NCR Corp. v. Comptroller of the Treasury,* 313 Md. 118, 544 A.2d 764, 777–78 (1988); *see also Polaroid Corp. v. Comm'r of Revenue,* 393 Mass. 490, 472 N.E.2d 259, 264 n. 10 (1984) (stating that "a statutory pattern that determines taxable income by starting with Federal gross income casts doubt on the propriety of the adoption of a worldwide unitary approach in determining taxable net income"); *cf. Caterpillar Inc. v. N.H. Dep't of Revenue Admin.,* 144 N.H. 253, 741 A.2d 56, 59 (1999), *cert. denied,* 529 U.S. 1021, 120 S.Ct. 1424, 146 L.Ed.2d 315 (2000) (interpreting the apportionment statute of New Hampshire—a water's edge jurisdiction—to exclude foreign figures from the three factors); *NCR Corp. v. Comm'r of Revenue,* 438 N.W.2d 86, 90–91 (Minn.), *cert. denied,* 493 U.S. 848, 110 S.Ct. 144, 107 L.Ed.2d 103 (1989) (interpreting the term "taxpayer" in Minnesota's tax laws not to include foreign subsidiaries); *NCR Corp. v. S.C. Tax Comm'n,* 304 S.C. 1, 402 S.E.2d 666, 669 (1991) (interpreting the term "taxpayer" not to include foreign subsidiaries).

[¶ 16] We noted in *E.I. Du Pont de Nemours & Co.* that the inclusion of for-

---

**3.** One court construed the UDITPA language to include foreign property, sales, and payroll figures. *Kellogg Co. v. Herrington,* 216 Neb. 138, 343 N.W.2d 326, 331–33 (1984). The Nebraska Supreme Court concluded that the terms "all" and "everywhere" were not limited to the United States, stating that the outcome "may be unfortunate, and not what the Legislature intended, but it is, in fact, what was accomplished." *Id.* at 332–33. Nebraska's Legislature has since made clear that "[t]he factors shall not include any property, payroll, or sales that are a part of the production of income that is not subject to apportionment." NEB. REV. STAT. § 77–2734.10(4) (2003).

eign dividends in a company's apportionable business income without considering the property, payroll, or sales of the foreign affiliates would result in an overstatement of in-state income by understating the denominators of the three apportionment fractions. 675 A.2d at 88–89 (citing *Tambrands, Inc. v. State Tax Assessor*, 595 A.2d 1039 (Me.1991)). Today, we observe the converse: a business's in-state income would be *understated* if the denominators, but not the numerators, in the apportionment formula were to include foreign property, payroll, and sales figures.

[¶ 17] Accordingly, by reading the ambiguous apportionment factors in the context of Maine's statutory taxation scheme and our existing interpretive case law,[4] we conclude that the court correctly determined that the figures used in the denominators of the factors were properly limited to property, payroll, and sales within the United States.

The entry is:

Judgment affirmed.

---

4. The language of the regulations in effect during the years in question also suggests a "water's edge" approach. The only regulation in effect at the time that has any bearing on the present case describes what compensation is included in the payroll factor:

> In the case of employees not subject to the Internal Revenue Code (e.g., those employed in foreign countries), the determination of whether such benefits or services would constitute income to the employees shall be made as though such employees were subject to the Internal Revenue Code. *Compensation includes only amounts attributable to the business income subject to apportionment.*

Me. Bureau of Taxation Rule 801.06(B) (April 27, 1982; May 1, 1996 (electronic conversion)) (emphasis added).