MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:     2013 ME 48
Docket:       BCD-12-254
Argued:       April 9, 2013
Decided:      May 21, 2013

Panel:        SAUFLEY, C.J., and ALEXANDER, SILVER, MEAD, and GORMAN, JJ.

EAGLE RENTAL, INC.

v.

STATE TAX ASSESSOR

MEAD, J.

[¶1]  Eagle Rental appeals from a judgment entered in the Business and Consumer Docket (*Nivison, J.*) declaring that the company owes use tax on four Cadillac Escalades.  Eagle Rental argues that it does not owe use tax because Daniel Bickford, the company's sole shareholder, and his wife operated the Escalades with dealer plates for their personal use in accordance with Maine's dealer plate statute, 29-A M.R.S. § 1002(1)(B) (2012).  Specifically, the company contends that the dealer plate statute, which permits "personal use" of vehicles in a company's inventory bearing dealer plates, *see id.*, prevents the imposition of use tax when inventory has been withdrawn for the "retailer's own use," 36 M.R.S. § 1861 (2012).  We conclude that Eagle Rental owes use tax on the Escalades and affirm the judgment.

## I. BACKGROUND

[¶2]   The facts are established by the parties' extensive stipulation of facts and the court's findings of fact that are supported by competent evidence in the record.

[¶3]   Eagle Rental is a Maine corporation with its principal place of business in Waterville.  Daniel Bickford is the company's president and his wife is the vice president and treasurer.  Eagle Rental rents and sells for commercial and consumer use light and heavy construction and home improvement equipment, such as wallpaper steamers, carpet cleaners, water trucks, dump trucks, excavators, and boom lifts.  Eagle Rental is also a licensed used car dealer, which allows it to sell dump trucks and other vehicles.  Under that license, the company accepts used vehicles in trade.  Between 2004 and 2011, Eagle Rental sold fewer than ten passenger cars received in trade and averaged between three and five passenger cars in its inventory at any one time, including the disputed Cadillac Escalades.

[¶4]   Beginning in 2003, Eagle Rental began purchasing Escalades and trading them in to dealers for newer models.  The company purchased its first Escalade, a 2003 vehicle with 6,763 miles, in 2003.[1]  This initiated the first series of vehicle transactions.  In March 2007, the company traded in the 2003 Escalade

---

[1]   Although the 2003 Escalade was not assessed any use tax, the parties stipulated that the Bickfords' use of the 2003 Escalade was consistent with their use of the four Escalades at issue.

when it had 54,650 miles for a used 2005 Escalade. The 2005 Escalade had 12,278 miles and was purchased for $38,500. In September 2007, when the vehicle had 21,075 miles, Eagle Rental traded it in for a used 2007 Escalade, which had 12,850 miles and was purchased for $52,500. It was sold in 2010, when it had 53,345 miles. At that time, Eagle Rental purchased a Cadillac STS for approximately $42,000.

[¶5] The second series of Escalade transactions began in 2005, when Eagle Rental purchased a 2004 Escalade with 12,225 miles for $40,500. In 2007, it traded in that Escalade for a new 2007 Escalade with 10 miles that was purchased for $57,498. As of November 2009, that Escalade had 42,123 miles. None of the Escalades were sold at retail.

[¶6] The Bickfords drive Escalades because, in their opinion, these vehicles are favored by many of their customers in the construction industry. The first two Escalades were not a popular color, according to Bickford, so he traded them in. Bickford testified that he has been unable to sell his Escalade inventory for the last several years because of the economy.

[¶7] The Bickfords live about two miles from Eagle Rental, and they drive the Escalades home most nights. Bickford testified that they drive the Escalades regularly for both business and personal use, including going to the grocery store, the movies, out to dinner, commuting, and attending their children's school and

4

sporting events. He drove the Escalades to sales calls, auctions, and construction sites in Maine, Massachusetts, Connecticut, and New Hampshire. The Bickfords do not own any passenger vehicles in their own names, and Eagle Rental paid for the fuel, maintenance, and insurance on the Escalades.

[¶8] Bickford testified that he intended to resell the Escalades. He said that he had received some offers on the Escalades and took the cars on test drives, but he kept no records of these sales-related activities. His primary method of advertising the Escalades was through word of mouth in a network of people, such as equipment sellers and used car dealers, who communicate regularly about what they have for sale. Since 2005, the Escalades have been included on a "line card," which is a list of the inventory featured for sale, that he posts in his Waterville showroom. The 2007 Escalades were also posted for sale on the company's website, but no pictures were provided. Bickford testified that there were no pictures because he did not know how to add pictures to the website. The Escalades never had "for sale" signs on them. Although Bickford testified that he kept the required used car disclosure forms on the Escalades, *see* 10 M.R.S. § 1475(1) (2012), a tax auditor did not see them when she observed the vehicles from a close distance.

[¶9] The Tax Assessor assessed use taxes on the 2004, 2005, and two 2007 Cadillac Escalades and upheld the assessment upon the Bickfords' request for

reconsideration. Pursuant to M.R. Civ. P. 80C, Eagle Rental appealed to the Superior Court. The Superior Court transferred the case to the Business and Consumer Docket, which affirmed the assessment of use taxes. Eagle Rental filed this timely appeal, challenging both the court's interpretation of the dealer plate and use tax statutes, and the court's determination that the Escalades were withdrawn from inventory.

## II. STANDARD OF REVIEW

[¶10] Eagle Rental has the burden of proof on all factual and legal issues by a preponderance of the evidence. *See Gannett Co. v. State Tax Assessor*, 2008 ME 171, ¶ 10, 959 A.2d 741 (citing 36 M.R.S. § 151 (2007)); *Town of Poland v. Poland Spring Health Inst., Inc.*, 649 A.2d 1098, 1100 (Me. 1994) (holding that the party claiming a tax exemption must prove entitlement to that exemption by a preponderance of the evidence); *Frank v. Assessors of Skowhegan*, 329 A.2d 167, 172 (Me. 1974). We review the court's conclusions of law de novo and its findings of fact for clear error. *Gannett Co.*, 2008 ME 171, ¶ 10, 959 A.2d 741.

## III. DISCUSSION

A. Statutory Interpretation

[¶11] We begin our discussion by analyzing the plain language of Maine's dealer plate and use tax statutes in order "to effectuate the intent of the

6

Legislature." *Irving Pulp & Paper, Ltd. v. State Tax Assessor*, 2005 ME 96, ¶ 8, 879 A.2d 15 (quotation marks omitted). To that end, we "consider the language in the context of the whole statutory scheme, and construe the statute to avoid absurd, illogical, or inconsistent results." *Id.* (citations and quotation marks omitted). We do not find the statutes at issue in this case to be ambiguous, and thus we do not consider their legislative history. *See id.* (providing that extrinsic indicia of legislative intent, such as legislative history, are only examined if we determine that a statute is ambiguous).

[¶12] Maine's dealer plate statute is located in Title 29-A, which governs motor vehicles. It restricts the operation of vehicles bearing dealer plates that are "owned or controlled by" a dealer to certain uses, and permits a dealer's personal use. 29-A M.R.S. § 1002(1)(B). The plain language of the statute limits the *number of dealer plates* allowed for personal use: "There may be no more than one dealer plate for the personal use of the manufacturer or dealer and one dealer plate for the personal use of the immediate family of the dealer." *Id.*; *see also* 29-A M.R.S. § 851(2), (6) (2012) (defining "dealer" and "immediate family"). It does not, as Eagle Rental contends, allow a dealer to devote two vehicles in the dealer's inventory primarily to personal use without paying use tax. The dealer plate statute makes no mention of taxes. *See generally* 29-A M.R.S. § 1002.

[¶13]  Separately, Title 36, governing taxation, provides in relevant part that sellers such as Eagle Rental are liable for use tax "[w]hen tangible personal property purchased for resale is withdrawn from inventory by the retailer for the retailer's own use."[2]  36 M.R.S. § 1861.  There is no express exemption for vehicles bearing dealer plates, and "[i]t is a well established law of property taxation [that] [t]axation is the rule; exemption from taxation is the exception." *Eagle Rental, Inc. v. City of Waterville*, 632 A.2d 130, 131 (Me. 1993) (first alteration added) (quotation marks omitted).

[¶14]  Because it is possible to read the statutes so they do not conflict, we will read them in harmony with each other.  *See Michalowski v. Bd. of Licensure in Med.*, 2012 ME 134, ¶ 12, 58 A.3d 1074.  Read together, the dealer plate and taxation statutes provide that dealers and their immediate families may use dealer plates on vehicles in a dealer's inventory for their personal use without being subject to use tax until the vehicles to which the plates are attached are withdrawn from inventory.  Whether the Escalades at issue are subject to use tax thus turns on whether they have been withdrawn from Eagle Rental's inventory.

---

[2]  "Use" is defined to include the "exercise in this State of any right or power over tangible personal property incident to its ownership, including the derivation of income, whether received in money or in the form of other benefits, by a lessor from the rental of tangible personal property located in this State." 36 M.R.S. § 1752(21) (2012).

8

B.    Whether the Escalades Were Withdrawn From Inventory

[¶15]   Accordingly, we next consider whether Eagle Rental withdrew the Escalades from its inventory.  This is a fact-driven analysis and it is unlikely that a single factor would be dispositive; rather, the analysis is based on the totality of circumstances in a given case.  *Cf. Portland Gas Light Co. v. Johnson*, 244 A.2d 817 (Me. 1968) (undertaking a fact-intensive inquiry to determine whether fuel used in a manufacturing process was subject to use tax).

[¶16]   In this case, the court considered appropriate factors in its analysis, including the nature of Eagle Rental's dealership activities, the way it managed the Escalades in comparison with its other inventory, how the Escalades were advertised, Eagle Rental's pattern of trading in the Escalades for newer models, the number of miles put on the Escalades, and whether the Escalades were ultimately sold at retail.  Other factors that might be appropriate to consider in a case like this include whether there are "for sale" signs or disclosure statements on the vehicles, the length of time the dealer owns the vehicle, where the vehicle is stored, and whether the dealer owns his or her own personal passenger vehicle.  The factors identified here are neither exhaustive nor exclusive, however, and the analysis necessarily depends upon the facts of the particular case.

[¶17]   There is competent evidence in the record to support the court's determination that Eagle Rental withdrew the Escalades from its inventory,

including that the company did not regularly sell passenger or luxury vehicles, the Bickfords had a pattern of trading in the vehicles for newer models every few years after devoting the Escalades primarily to personal use and after putting tens of thousands of miles on them, the Bickfords did not own passenger vehicles in their own names, the company did not sell the Escalades at retail, and these automobiles were only passively advertised for sale.

[¶18]  We conclude that Eagle Rental did not meet its burden of proving that the Escalades were not withdrawn from inventory.  Accordingly, the trial court correctly concluded that they are subject to use tax.

The entry is:

>Judgment affirmed.

---

**On the briefs:**

>William D. Hewitt, Esq., and Catherine R. Connors, Esq., Pierce Atwood LLP, Portland, for appellant Eagle Rental

>Janet T. Mills, Attorney General, and Gregg D. Bernstein, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee State Tax Assessor

**At oral argument:**

>William D. Hewitt, Esq., for appellant Eagle Rental

>Gregg D. Bernstein, Asst. Atty. Gen., for appellee State Tax Assessor