MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:    2016 ME 62
Docket:      Cum-15-159
Argued:      February 10, 2016
Decided:     April 21, 2016

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HJELM, JJ.

CHADWICK-BaROSS, INC.

v.

CITY OF WESTBROOK et al.

SAUFLEY, C.J.

[¶1]  In this appeal, we are asked to determine whether the Superior Court (Cumberland County, *Mills, J.*) erred in concluding that equipment owned by a business taxpayer—but leased to others—did not fall clearly within the personal property tax exemption for stock-in-trade.  *See* 36 M.R.S. § 655(1)(B) (2015). Chadwick-BaRoss, Inc., appeals from a summary judgment entered in favor of the City of Westbrook and its tax assessor on Chadwick-BaRoss's complaint seeking a declaratory judgment that it did not owe personal property taxes on heavy equipment that it leased to others.  We conclude, as did the Superior Court, that the equipment does not fall "unmistakably within the spirit and intent," *Hurricane Island Outward Bound v. Town of Vinalhaven*, 372 A.2d 1043, 1046 (Me. 1977), of the Legislature's tax exemption for "[s]tock-in-trade," 36 M.R.S. § 655(1)(B), and we affirm the judgment.

## I. BACKGROUND

[¶2]  The following facts, supported by the statements of material facts and referenced evidence in the summary judgment record, are viewed in the light most favorable to Chadwick-BaRoss.  *See Victor Bravo Aviation, LLC v. State Tax Assessor*, 2011 ME 50, ¶ 10, 17 A.3d 1237 (reviewing "the grant of summary judgment de novo, viewing the facts in the light most favorable to the nonprevailing party to determine whether the court correctly concluded that there were no genuine issues of material fact and that the prevailing party was entitled to judgment as a matter of law").

[¶3]  Chadwick-BaRoss is a Maine corporation with a principal place of business in Westbrook.  It is a heavy-equipment dealer that sells equipment at retail to customers, and occasionally leases that equipment.

[¶4]  After receiving a 2012 personal property tax declaration form from Chadwick-BaRoss, the City sent a letter to the company in May 2012 asking it to include additional equipment that Chadwick-BaRoss owned but that, on the tax day of April 1, 2012, was held in the physical possession of others pursuant to lease agreements.  The City asked for a response by June 8, 2012, but it received no response and sent a follow-up letter on October 22, 2012, again seeking a list of all equipment that had been on lease to others on April 1, 2012. Chadwick-BaRoss's president responded by letter that, although twelve identified

pieces of equipment (nine wheel loaders, one compact wheel loader, one arctic hauler, and one skid steer) were in the hands of customers pursuant to "interim rental agreements," Chadwick-BaRoss considered those items to be inventory available for immediate sale and therefore exempt from the personal property tax pursuant to 36 M.R.S. § 655(1)(B).

[¶5]     The equipment at issue was in the physical possession of Chadwick-BaRoss customers[1] pursuant to standard agreements entitled "EQUIPMENT RENTAL AGREEMENT."    The standard agreement form specified a term for the rental in weeks or months, established a rental rate, and authorized repossession if the customer failed to pay the rent that it owed.  The agreement included the following provision: "Chadwick BaRoss has the right to exchange the Equipment at any time for Equipment of equal capacity at no additional expense to Customer.  If Customer has an option to purchase, that option, if not exercised, will lapse concurrent with the exchange."  The agreement also stated, "The Equipment will at all times be located at Customer's job site . . . and will not be removed from said location without the prior written consent of

---

[1]   Chadwick-BaRoss did not assert facts or provide evidence concerning any customers' specific purposes for, or uses of, the identified equipment during the lease terms.

Chadwick-BaRoss." All but two pieces of assessed equipment were ultimately sold in the regular course of business.[2]

[¶6] Although asked to supply information about the age and value of the identified equipment, Chadwick-BaRoss did not provide that information. On or about December 3, 2012, the City and its tax assessor made a supplemental assessment of items of personal property owned by Chadwick-BaRoss, based on estimated values, resulting in a supplemental tax bill of $27,488.52 for the tax year ending in 2013.

[¶7] On December 23, 2013, Chadwick-BaRoss filed a two-count complaint in the Superior Court against the City and its tax assessor seeking a declaratory judgment that (1) the tax was improperly assessed and (2) the City acted outside its authority in issuing a supplemental assessment.[3] Chadwick-BaRoss moved for summary judgment on the first count, and the City and tax assessor filed a cross-motion for summary judgment on that count.

[¶8] The court entered a summary judgment in favor of the City on the first count, after which Chadwick-BaRoss stipulated to the dismissal of the second

---

[2] The summary judgment record does not indicate whether the equipment was purchased by the lessees or other customers.

[3] As the Superior Court noted, a challenge to the lawfulness of an entire tax assessment may be pursued in a declaratory judgment action instead of through a Rule 80B appeal. *See Capodilupo v. Town of Bristol*, 1999 ME 96, ¶ 4, 730 A.2d 1257 ("A declaratory judgment action is a proper means to obtain a remedy when an *entire tax assessment is void* (*e.g.,* the tax itself is unlawful or the taxing authority is invalid).").

count of its complaint. Chadwick-BaRoss timely appealed to us from the resulting final judgment. *See* 14 M.R.S. §§ 1851, 5959 (2015); M.R. App. P. 2.

## II. DISCUSSION

[¶9] Chadwick-BaRoss argues that the court erred in determining that the equipment was not inventory held for resale because the rental agreements significantly limited the right of Chadwick-BaRoss to sell the equipment. It contends that, because it had the right to retake possession and sell the equipment at any time provided that it replaced the equipment with equipment of equivalent capacity, the property was business inventory. According to Chadwick-BaRoss, the Legislature intended the stock-in-trade exemption to benefit businesses such as its own as an incentive to keep businesses that hold inventory from moving out of Maine.

[¶10] With some exceptions and exemptions, "[a]ll personal property within or without the State . . . shall be taxed to the owner in the place where he resides." 36 M.R.S. § 602 (2015). "Personal property for the purposes of taxation includes all tangible goods and chattels wheresoever they are and all vessels, at home or abroad." 36 M.R.S. § 601 (2015). One exemption from personal property taxation applies to "[s]tock-in-trade, including inventory held for resale by a distributor, wholesaler, retail merchant or service establishment." *Id.* § 655(1)(B).

6

A.      Standard of Review and Rules of Construction

[¶11]  "We review de novo the Superior Court's conclusion of law as to the application of the statute.  When interpreting a statute, we give effect to the intent of the Legislature by first looking at the plain meaning of the statutory language." *DaimlerChrysler Servs. N. Am., LLC v. State Tax Assessor*, 2003 ME 27, ¶ 7, 817 A.2d 862 (citation omitted).  In doing so, we "consider[] the language in the context of the whole statutory scheme, and construe the statute to avoid absurd, illogical, or inconsistent results." *Irving Pulp & Paper, Ltd. v. State Tax Assessor*, 2005 ME 96, ¶ 8, 879 A.2d 15 (alteration in original) (citations omitted) (quotation marks omitted).  "Only if the language of a statute is ambiguous will we look beyond it to the legislative history or other external indicia of legislative intent." *Id.*  A statute is ambiguous if it "is susceptible of at least two different meanings." *Id.* ¶ 10.

[¶12]  With respect to tax statutes in particular, because "taxation is the rule and tax exemption is the exception," the "burden of establishing tax exemption is upon the plaintiff.  Exemption is a special favor conferred.  The party claiming it must bring his case unmistakably within the spirit and intent of the act creating the exemption."  *Hurricane Island Outward Bound*, 372 A.2d at 1046 (citations omitted).  "[W]e have said on several occasions that tax exemptions are construed narrowly."  *Brent Leasing Co. v. State Tax Assessor*, 2001 ME 90, ¶ 15,

773 A.2d 457 (citing cases). Thus, "all doubt and uncertainty as to the meaning of the statute and legislative intendment must be weighed against exemption." *Silverman v. Town of Alton*, 451 A.2d 103, 105 (Me. 1982). "[A]n exemption from taxation, while entitled to reasonable interpretation in accordance with its purpose, is not to be extended to situations not clearly within the scope of the statutory provisions." *Id.*

[¶13] Based on these rules of construction, unless the plain language or, in the event of ambiguity, extrinsic information such as legislative history makes it clear that Chadwick-BaRoss's property falls within the exemption set forth in 36 M.R.S. § 655(1)(B), the Superior Court's judgment affirming the imposition of the personal property tax must be affirmed.

[¶14] In conducting our review, we are constrained by Chadwick-BaRoss's decision not to provide, either to the City or to the court on summary judgment, specific evidence of the equipment renters' purposes, the duration of the rentals, the ease or difficulty with which the equipment could be returned to the Chadwick-BaRoss lot, or the income that Chadwick-BaRoss received from the rentals. In essence, Chadwick-BaRoss's appeal tests whether the language of its lease contracts alone renders the exemption applicable.[4] Specifically, the question

---

[4] Although Chadwick-BaRoss also challenges the court's statement that Chadwick-BaRoss would have to "procure" other equipment to replace the leased equipment, we are not persuaded that the court

8

presented here is whether the lease provision authorizing Chadwick-BaRoss to retake possession of the equipment in exchange for comparable replacement equipment brings the leased equipment within the stock-in-trade exemption.

B.      Interpretation of Section 655(1)(B)

[¶15]    Section 655(1)(B) exempts from personal property taxation "[s]tock-in-trade, including inventory held for resale by a distributor, wholesaler, retail merchant or service establishment." Neither "stock-in-trade" nor "inventory" is defined in the tax statutes. *See* 36 M.R.S. § 501 (2015) (providing definitions for the chapter of title 36 governing cities and towns).

[¶16]    Stock-in-trade may mean many different things, including inventory held for sale, the tools of a trade, or specialized equipment required for a business.[5] Given the absence of a statutory definition and the differing definitions available through standard sources, the term is ambiguous. More than twenty years ago, we construed this specific ambiguous language in view of "the purpose for the

---

misunderstood the effect of the leases or relied on any evidence extrinsic to the summary judgment record.

[5] In dictionaries, "stock-in-trade" is defined as "**1.** The inventory carried by a retail business for sale in the ordinary course of business. **2.** The tools and equipment owned and used by a person engaged in a trade. **3.** The equipment and other items needed to run a business," *Stock in Trade*, *Black's Law Dictionary* (10th ed. 2014), or "the equipment necessary to or used in the conduct of a trade or business: as  **a:** the goods kept for sale by a shopkeeper  **b:** the fittings and appliances of a workman  **c:** the aggregate of things necessary to carry on a business," *Webster's Third New International Dictionary of the English Language Unabridged* (*Webster's*) 2247 (2002). "Inventory" is defined as "[r]aw materials or goods in stock," *Inventory*, *Black's Law Dictionary*, or "the quantity of goods or materials on hand: STOCK, SUPPLY . . . a surplus of goods or materials accumulated against future needs: RESERVE," *Webster's* at 1189.

enactment . . . to encourage businesses to move to, or remain in, Maine, by eliminating the taxation of business *inventory*." *Eagle Rental, Inc. v. City of Waterville*, 632 A.2d 130, 131 (Me. 1993) (emphasis added). The Statement of Fact that accompanied the enacting legislation clarified that the Legislature was focused on inventory—not all tools of a business's trade:

> It is the intent of this legislation to eliminate the personal property tax upon inventories and to substitute the revenue loss by the increase in the corporate income tax. The municipalities will be reimbursed for the revenue loss by the State.

> The impact of the personal property tax on Maine industry is both adverse and inequitable. Maine industry suffers a competitive disadvantage in competing with neighboring states. Some major manufacturers are storing their products outside of Maine because of the effect of the tax. Maine, as a result, is losing some fabricating warehousing and distribution activity as a source of employment to neighboring states. The tax on inventory has no significant relationship with profits. *The inventories earn no profits while awaiting sale.*

L.D. 1862, Statement of Fact (106th Legis. 1973) (emphasis added); *see also* 3 Legis. Rec. 4393 (1973) ("[T]he main purpose of this bill is to eliminate the inventory tax which is generally agreed to be a most inequitable tax. . . . [T]he purpose of this bill is to keep industry and warehouses in the State of Maine." (statement of Rep. Cottrell)); *id.* at 4395-4396 (statement of Rep. Martin indicating the purpose of the bill to eliminate "the inventory tax").

10

[¶17]   Accordingly, when the property at issue had been leased to another entity and *did* bring in profits, we held that it did not constitute inventory or stock-in-trade because "[e]quipment in the possession of a lessee under a valid lease agreement at the time of the tax assessment is not available for sale to any customer but the lessee, whose consent is necessary for termination of the lease." *Eagle Rental*, 632 A.2d at 132 (quotation marks omitted); *see also Inhabitants of the Town of Farmington v. Hardy's Trailer Sales, Inc.*, 410 A.2d 221, 224 (Me. 1980) ("The legislature has thus continued to treat stock in trade as manufactured merchandise held for sale by the owner . . . ."). "'To include equipment which is not salable to the general public in the category of exemptible inventory would, we think, obfuscate the most reasonable meaning of the term.'" *Eagle Rental*, 632 A.2d at 132 (quoting *Tyler Equip. Corp. v. Town of Wallingford*, 561 A.2d 936, 939 (Conn. 1989)).  Thus, we concluded that "only the portion of Eagle Rental's inventory in its possession, and held for sale on the assessment date, [was] exempt from the personal property tax under [section] 655(1)(B)." *Id.*

[¶18]   Chadwick-BaRoss contends that its leases were not ordinary leases subject to the application of section 655(1)(B) announced in *Eagle Rental* because Chadwick-BaRoss's leases were explicitly designed to allow potential buyers to test equipment and Chadwick-BaRoss retained a right to possess the equipment upon providing adequate replacement equipment.  Chadwick-BaRoss suggests that

its agreements are more akin to test-drives than to leases, though nothing on the face of the agreement form indicates this purpose.

[¶19] We agree with the Superior Court that neither the plain language of the statute nor its legislative history brings the equipment identified in Chadwick-BaRoss's lease contracts "unmistakably within the spirit and intent of the act creating the exemption." *Hurricane Island Outward Bound*, 372 A.2d at 1046. The stated purpose of the legislation is to prevent taxation on inventory that is "earn[ing] no profits while awaiting sale." L.D. 1862, Statement of Fact (106th Legis. 1973). Here, the equipment was leased for compensation, which distinguishes this from a mere test-drive.[6]

[¶20] Consistent with the legislative history, and our interpretation in *Eagle Rental*, the tax exemption applies to stock-in-trade "held for resale," 36 M.R.S. § 655(1)(B), or "kept for sale," *Webster's Third New International Dictionary of the English Language Unabridged* (*Webster's*) 2247 (2002), such as inventory that is "in stock," *Inventory, Black's Law Dictionary* (10th ed. 2014), or "on hand," *Webster's* at 1189. The leased equipment was not held or kept in stock by Chadwick-BaRoss for sale or rental. Rather, it was out on lease and could not be

---

[6] Nor does the contract language here establish that the equipment inventory is tax-exempt because it "is in the taxpayer's possession and is available *for both sale and rental* on the assessment date." *Handyman Equip. Rental Co. v. City of Portland*, 1999 ME 20, ¶ 7, 724 A.2d 605 (emphasis added) (citing *Eagle Rental*, 632 A.2d at 131). Here, the equipment was not in the taxpayer's possession and was not available for both sale and rental on the assessment date.

sold to the general public unless replaced with other equipment. Construing the tax exemption narrowly, as we must, the equipment was properly subject to taxation.

The entry is:

Judgment affirmed.

**On the briefs:**

David B. McConnell, Esq., and Joseph C. Siviski, Esq., Perkins Thompson, P.A., Portland, for appellant Chadwick-BaRoss, Inc.

Natalie L. Burns, Esq., and Roy T. Pierce, Esq., Jensen Baird Gardner & Henry, Portland, for appellees City of Westbrook and Elizabeth Sawyer

**At oral argument:**

David B. McConnell, Esq., for appellant Chadwick-BaRoss, Inc.

Roy T. Pierce, Esq., for appellees City of Westbrook and Elizabeth Sawyer

Cumberland County Superior Court docket number CV-2013-549
For Clerk Reference Only