MAINE SUPREME JUDICIAL COURT                         Reporter of Decisions
Decision:      2021 ME 32
Docket:        Cum-20-159
Argued:        February 11, 2021
Decided:       June 17, 2021

Panel:         MEAD, GORMAN, JABAR, HUMPHREY, HORTON, and CONNORS, JJ.

## FAIR ELECTIONS PORTLAND, INC., et al.

### v.

## CITY OF PORTLAND

HORTON, J.

[¶1]  Fair Elections Portland, Inc., and thirteen voters of the City of Portland[1] (collectively FEP) appeal from a judgment of the Superior Court (Cumberland County, *MG Kennedy, J.*) affirming a decision of the Portland City Council not to submit to the voters a citizen-initiated ballot question that proposed a change to the City of Portland's charter.  Because the City Council failed to make findings of fact to explain its decision and enable appellate review, we must vacate the judgment and remand to the City Council for further proceedings.

---

[1]  The thirteen voters are Betress D. Ako, Krystian W. Bigosinski, April D. Fournier, Christopher P. Hafford, Megan L. Lauer, Kimberly A. Rich, Philip T. Steele, Kathryn H. Sykes, Joanna J. Tatlock, Maria E. Testa, Anna J. Trevorrow, Scott Vonnegut, and Damon R. Yakovleff.

## I. BACKGROUND

### A.    The Home Rule Act

[¶2]  To provide context for the factual background in this case, we first review the statutory process for citizen-initiated changes to municipal charters.

[¶3]    The Maine Constitution grants to the inhabitants of all municipalities what is known as home rule power: the "power to alter and amend their [municipal] charters on all matters, not prohibited by Constitution or general law, which are local and municipal in character."  Me. Const. art. VIII, pt. 2, § 1.  The same provision requires the Legislature to prescribe procedures for municipalities to effectuate the home rule power.  *Id.*  The set of statutes that the Legislature has enacted, *see* 30-A M.R.S. §§ 2101-2109 (2021) (collectively the Home Rule Act),[2] has the express purpose of "implement[ing] the home rule powers granted to municipalities" by the Maine Constitution.  30-A M.R.S. § 2101.  The Home Rule Act sets forth procedures for amending and revising municipal charters and for the establishment and operation of charter commissions.  30-A M.R.S. §§ 2102-2105.

---

[2] Section 2102 of the Home Rule Act has been amended since the time period relevant to this case, but the amendments do not affect our analysis here.  *See* P.L. 2019, ch. 149, §§ 1-2 (effective Sept. 19, 2019) (codified at 30-A M.R.S. § 2102(3)(B), (5)(A) (2021)).  For consistency, all citations to the Home Rule Act in this opinion are to the 2021 version of the Maine Revised Statutes.

[¶4]  The statute does not include definitions of a charter "amendment" or a charter "revision," nor does it expressly identify what differentiates one from the other.  However, it does distinguish between the two by setting forth different processes for their adoption.  *See generally* 30-A M.R.S. § 2102 (governing charter revisions); 30-A M.R.S. § 2104 (governing charter amendments).  The central difference in process is that a proposed amendment must be submitted directly to the voters in a municipal election, *see* 30-A M.R.S. §§ 2104(1)-(2), 2105(2), whereas a proposed revision can only be submitted to the voters upon recommendation of a charter commission, *see* 30-A M.R.S. §§ 2102(1)-(2), 2103(5)(D), (6), 2105(1).

[¶5]  Either process can be initiated by the municipal officers—in this case, city councilors—or by municipal voters.  30-A M.R.S. §§ 2102(1)-(2), 2104(1)-(2); *see* 30-A M.R.S. § 2001(10) (2021).  For the voter-initiated process, the first step is for any five voters of the municipality to file an affidavit with the municipal clerk setting forth their proposal, stating that they constitute a "petitioners' committee," and requesting that the clerk issue petition forms for the committee to circulate.  30-A M.R.S. §§ 2102(3)(A), 2104(2)-(3).

4

[¶6]  If the petitioners' committee is proposing a charter revision, the petition forms must state that those signing the petition are requesting that the municipal officers establish a charter commission, 30-A M.R.S. § 2102(3)(B)(1), because revisions can be submitted to the voters only through a recommendation by a charter commission, 30-A M.R.S. §§ 2102(1)-(2), 2103(5)(D), (6), 2105(1).  If instead the petitioners' committee is proposing a charter amendment, the petition forms must state that those signing the petition are requesting that the municipal officers "provide for the amendment of the municipal charter," which is accomplished by placing the proposed amendment on a ballot.  30-A M.R.S. § 2104(2)-(3).

[¶7]  A petitioners' committee proposing a charter amendment also has the option to request that the petition forms include the following language:

> Each of the undersigned voters further requests that if the municipal officers determine that the amendment set out below would, if adopted, constitute a revision of the charter, then this petition shall be treated as a request for a charter commission.

30-A M.R.S. § 2104(4).  If a petition that includes this optional language garners enough voter signatures and meets the other statutory requirements, *see* 30-A M.R.S. §§ 2102(3)(B), 2104(2)-(3), the municipal officers must submit it to the voters either as a proposed charter amendment or as a proposal to form a charter commission, depending on whether the municipal officers determine

that the proposed change would constitute an amendment or a revision, 30-A M.R.S. § 2104(2), (4).

[¶8] After the municipal clerk issues petition forms to the petitioners' committee and the petition is circulated for voter signatures, the signed forms are submitted to the clerk, who determines whether they comply with the signature and other requirements of the statute. 30-A M.R.S. §§ 2102(3)(C), (4), 2104(3). In the case of a proposed charter amendment, after holding a public hearing on the proposal, the municipal officers must submit to the voters, at a regular or special election, the question of whether to approve the proposed amendment. 30-A M.R.S. §§ 2104(2), (5)(A), (C), 2105(2).

[¶9] If the proposal is instead for a charter revision, the question that the municipal officers must submit to the voters is whether to convene a charter commission. 30-A M.R.S. § 2102(2), (4), (5). If the voters decide that a charter commission should be established, commission members must be elected and appointed, and the commission must hold public hearings and issue a preliminary report. 30-A M.R.S. § 2103(1)-(5). Within twelve months—or up to two years, if an extension is granted—the commission must submit to the municipal officers a final report that contains the text of any recommended charter revision. 30-A M.R.S. § 2103(5)(D)-(E). The municipal officers must

then submit to the voters the question of whether to adopt any revision recommended by the commission. 30-A M.R.S. §§ 2103(6), 2105(1).

[¶10] The Home Rule Act lacks specificity in two respects particularly pertinent to this case. It does not expressly explain the difference between a charter amendment and a charter revision. It also does not specify whether the municipal officers may determine that a voter-initiated petition that lacks the optional language and purports to propose a charter amendment in fact proposes a charter revision.

B.     Procedural History

[¶11] The following procedural facts, which are undisputed, are drawn from the administrative record filed in the Superior Court.[3] In April 2019, by filing an affidavit with Portland's City Clerk, five Portland voters initiated the process for circulating a petition in support of placing, on an upcoming municipal ballot, what they labeled as a proposed amendment to Portland's charter. *See* 30-A M.R.S. §§ 2102(3)(A), 2104(3).

---

[3] Ordinarily, in an appeal from a judgment on a complaint for review of governmental action filed pursuant to M.R. Civ. P. 80B or 80C, we review the facts found by the person or entity that made the decision at issue. *E.g.*, *City of Old Town v. Expera Old Town, LLC*, 2021 ME 23, ¶ 13, --- A.3d ---. As we discuss *infra*, the record in this case does not include any stated findings by the municipal decision maker at issue, the Portland City Council.

[¶12]  Their proposed charter modification read as follows:

Article IV of the City Charter of the City of Portland shall be amended by adding the following section immediately after Section 11, as follows:

Section 12.  Public Financing of Municipal Elections

The city council shall establish and fund a mechanism providing public campaign funds to qualified candidates for mayor, city council, and school board.  The mechanism must provide sufficient funds to allow candidates who meet qualifying criteria to conduct competitive campaigns, must be voluntary, must limit the amount of private funds a candidate may raise, must only be available to candidates who demonstrate public support, and must be limited to candidates who enter into a binding agreement not to accept private contributions other than those allowed by the public funding program.  The mechanism must be available by the 2021 municipal elections.

[¶13]  Although the voters characterized the proposed modification as an amendment, they exercised their statutory option to request that their petition be treated as a request for a charter commission in the event that the City Council determined that the petition actually proposed a charter revision. *See* 30-A M.R.S. § 2104(4).

[¶14]  Upon receiving the voters' affidavit, the City Clerk created petition forms for circulation and provided them to the petitioners' committee, *see* 30-A M.R.S. § 2102(3)(B), but the forms lacked the requested optional

8

language.  Despite this omission, the supporters of the petition proceeded to circulate the forms as provided.

[¶15]  In August 2019, the City Clerk certified that the petition had been returned containing a sufficient number of signatures for the measure to be placed on a ballot.  *See* 30-A M.R.S. § 2104(2)-(3).  The City Council scheduled a public hearing on the matter for September 4, 2019.  *See* 30-A M.R.S. § 2104(5)(A).

[¶16]  Before the public hearing, the City's attorney submitted a memorandum advising the City Council that the petition proposed a change to the charter that, if enacted, would involve "the type of fundamental change that a [c]harter [c]ommission must review" because the petition proposed a charter revision rather than a charter amendment.  Attorneys for Fair Elections Portland, Inc., submitted a memorandum to the City Council taking the opposite position and contending that the City Council was required to submit the question of whether to adopt the proposed charter modification directly to the voters.

[¶17]  At the public hearing, after listening to comments from the public, the councilors debated whether the measure constituted a charter amendment or a charter revision.  They also debated whether, if the measure were a

revision, the City Council should treat the petition as requesting a charter commission given the omission from the petition forms of the optional language reflecting that request. The City Council voted (7-2) not to put the measure to the voters as a charter amendment and then voted to postpone the matter until a meeting on September 16, 2019. At that meeting, after further debate, the City Council voted (5-3) not to "send [the petition question] out as a revision to the voters." The City Council then voted again (6-2) not to put the measure to the voters as a charter amendment and finally voted (6-2) to postpone the matter indefinitely. The City Council noted these votes in its minutes, but it did not make findings or otherwise explain its decisions.

[¶18] In September 2019, FEP brought this action in the Superior Court, challenging the City Council's decision not to put the proposed charter modification to the voters as a charter amendment. The operative pleading for purposes of appellate review is FEP's first amended complaint, filed in October 2019.[4] According to that complaint, at least ten of the individual plaintiffs were Portland voters who had signed the petition. FEP sought judicial review of the City Council's decision pursuant to M.R. Civ. P. 80B (Count 1) and

---

[4] Also in October 2019, on its own initiative and despite having tabled the petition, the City Council voted to place on the ballot for the June 2020 municipal election a question asking voters whether a charter commission should be established. *See* 30-A M.R.S. § 2102(1), (5) (2021).

asserted independent claims seeking a declaratory judgment and injunctive relief (Count 2) and alleging violations of state and federal law pursuant to 42 U.S.C.S. § 1983 (LEXIS through Pub. L. No. 116-344) (Counts 3 and 4). After the City filed a motion to dismiss the complaint, the court held a hearing on the motion, and the parties filed briefs and an administrative record.

[¶19] By order dated May 13, 2020, acting in an appellate capacity to adjudicate FEP's Rule 80B complaint for judicial review, the court affirmed the City Council's decision.[5] The court also dismissed FEP's independent claims, determining that those claims were duplicative of the Rule 80B appeal, which afforded an adequate process for judicial review of the City Council's decision. FEP filed this timely appeal. *See* 14 M.R.S. § 1851 (2021); M.R. App. P. 2B(c)(1).

## II. DISCUSSION

[¶20] When the Superior Court acts in an appellate capacity to decide a Rule 80B complaint for judicial review of a municipal decision, we review the municipal decision "directly without deference to the Superior Court's intermediate review." *Humboldt Field Rsch. Inst. v. Town of Steuben*,

---

[5] The court construed the City Council's several votes to reflect (1) an implicit legal conclusion that the City Council had the authority to make a threshold determination of whether the proposed modification would constitute an amendment or a revision if adopted and (2) an implicit finding that the proposed modification would in fact constitute a revision rather than an amendment. The court concluded that the implicit legal conclusion was correct and that the implicit finding could not be disturbed because it was supported by evidence in the administrative record.

2011 ME 130, ¶ 4, 36 A.3d 873; *see* M.R. Civ. P. 80B(f).  We review the operative decision "for error of law, abuse of discretion or findings not supported by substantial evidence in the record."  *Osprey Fam. Tr. v. Town of Owls Head*, 2016 ME 89, ¶ 9, 141 A.3d 1114 (quotation marks omitted).  "Substantial evidence exists if there is any competent evidence in the record to support a decision."  *21 Seabran, LLC v. Town of Naples*, 2017 ME 3, ¶ 10, 153 A.3d 113 (quotation marks omitted)).

[¶21]  FEP presents two central arguments in this appeal.[6]  First, it argues that when municipal officers receive a petition proposing what proponents have characterized as a charter amendment, the municipal officers are required to submit the proposal directly to the voters—in other words, that the City Council had no authority to make a threshold determination that the proposed modification would, if adopted, constitute a charter revision.  Second, in the alternative, FEP argues that even if the City Council had the authority to make that threshold determination, the proposed change at issue here cannot, as a

---

[6] Although the City raised several justiciability-related arguments before the trial court, it has not done so on appeal.  The Home Rule Act explicitly authorizes judicial review for purposes of enforcing the provisions relating to the amendment or revision of municipal charters.  30-A M.R.S. § 2108 (2021).  Having independently reviewed the issues of subject matter jurisdiction, standing, ripeness, and mootness, *see Brunswick Citizens for Collaborative Gov't v. Town of Brunswick*, 2018 ME 95, ¶ 7, 189 A.3d 248, we conclude that the matter is justiciable.

12

matter of law, be characterized as a charter revision.[7]  FEP does not argue that if the City Council determined that the proposed modification constituted a proposed charter revision it was then required to initiate the charter commission process despite the omission of the optional language from the petition.  We therefore do not address that issue here, and we limit our review to the City Council's vote not to place the petition question on the ballot as a proposed charter amendment.

## A.   The City Council's Authority

[¶22]   In response to FEP's first contention, the City argues that the Legislature intended for municipal officials to serve a "gatekeeping" role to ensure that any proposed charter modification that would fundamentally change a municipal charter—even one initially labeled an amendment by its

---

[7] FEP also argues that the trial court incorrectly dismissed the independent claims.  We disagree. The court did not abuse its discretion by dismissing the declaratory judgment claim in Count 2 of the first amended complaint because the claim was duplicative of the Rule 80B appeal and fails under our exclusivity rule. *See Cape Shore House Owners Ass'n v. Town of Cape Elizabeth*, 2019 ME 86, ¶¶ 7-9, 209 A.3d 102.  To the extent that Counts 3 and 4 asserted claims based on deprivations of procedural due process under federal law, they failed to state claims because the review available through Rule 80B provides adequate process as a matter of law.  *See* M.R. Civ. P. 12(b)(6); *Parratt v. Taylor*, 451 U.S. 527, 538-41 (1981), *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986); *Moreau v. Town of Turner*, 661 A.2d 677, 680 (Me. 1995).  To the extent that Counts 3 and 4 asserted violations of First Amendment or substantive due process rights, they failed to state claims against the City because they asserted that the City acted in violation of a state election law, not in execution of any official policy or custom, *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978), and also because we conclude that the City Council was entitled to exercise a gatekeeping function to determine whether the petition proposed an amendment or a revision of the charter, *see* M.R. Civ. P. 12(b)(6); *State v. Gorman*, 2004 ME 90, ¶ 41, 854 A.2d 1164 ("A trial court action, proper under the law, may be affirmed, even if for a reason different than that given by the trial court.").

proponents—would undergo review by a charter commission. Resolving the issue requires interpreting Maine's Home Rule Act, a task that we undertake de novo. *See Pilot Point, LLC v. Town of Cape Elizabeth*, 2020 ME 100, ¶ 17, 237 A.3d 200. "We look first to the plain language of [a] statute to determine its meaning if we can do so while avoiding absurd, illogical, or inconsistent results." *State v. Conroy*, 2020 ME 22, ¶ 19, 225 A.3d 1011. As part of the plain-language analysis, "we consider the [specific] language in the context of the whole statutory scheme," *Chadwick-BaRoss, Inc. v. City of Westbrook*, 2016 ME 62, ¶ 11, 137 A.3d 1020 (alteration omitted) (quotation marks omitted), and "examine the entirety of the statute, giving due weight to design, structure, and purpose as well as to aggregate language," *Dickau v. Vt. Mut. Ins. Co.*, 2014 ME 158, ¶ 22, 107 A.3d 621 (quotation marks omitted).

[¶23] Section 2104(4) of the Home Rule Act, headed "Amendment constituting revision," is specifically relevant to the issue presented here and provides as follows:

> At the request of the petitioners' committee, the petition form shall also contain the following language:
>
>> "Each of the undersigned voters further requests that if the municipal officers determine that the amendment set out below would, if adopted, constitute a revision of the charter, then this petition shall be treated as a request for a charter commission."

14

> *Upon receipt of a petition containing this language, the municipal officers, if they determine with the advice of an attorney that the proposed amendment would constitute a revision of the charter, shall treat the petition as a request for a charter commission and follow the procedures applicable to such a request.*

30-A M.R.S. § 2104(4) (emphasis added).

[¶24]  This section expressly contemplates review by municipal officers to determine whether a proposed amendment would in fact "constitute a revision of the charter."  *Id.*  FEP interprets the section to permit that determination by municipal officers only "[u]pon receipt of a petition containing" the optional language that was omitted from the petition forms in this case.  *Id.*  Although FEP's interpretation is grounded in the literal language of section 2104(4), it makes no sense in light of the plain language of the Home Rule Act as a whole.  *See Dickau*, 2014 ME 158, ¶ 20, 107 A.3d 621 ("A plain language interpretation should not be confused with a literal interpretation . . . .").  The Home Rule Act makes clear that the Legislature intended for proposed charter revisions to undergo the extensive review of a charter commission instead of being submitted directly to the voters.  *See* 30-A M.R.S. §§ 2102(2), (5), 2105(1); *see also supra* ¶ 9.  FEP's interpretation would produce absurd results because it would enable a petitioners' committee to circumvent the Legislature's intent.  The petitioners' committee could simply

label a proposed modification—even one that would obviously constitute a revision—as an amendment and decline to request the optional language provided in section 2104(4).

[¶25] We conclude that the Home Rule Act authorizes municipal officers to review a proposed charter modification to determine whether it constitutes a revision rather than an amendment, even where the petition presenting the proposed modification does not include section 2104(4)'s optional language.[8]

B.     The City Council's Vote to Decline to Put the Proposed Charter Modification to the Voters as a Proposed Charter Amendment

1.     The Parties' Arguments and the Framework for Appellate Review

[¶26] In its arguments on appeal, the City assumes that the City Council declined to put the public campaign financing modification to the voters as a proposed charter amendment based on a finding that the modification actually constituted a revision, and the City contends that the administrative record

---

[8] Although our conclusion is based on the aggregate language of the entire Home Rule Act, *see Chadwick-BaRoss, Inc. v. City of Westbrook*, 2016 ME 62, ¶ 11, 137 A.3d 1020, it is also supported by the relevant legislative history. In 1982, the Legislature amended what is now section 2104(4) to add the language quoted above. *See* P.L. 1981, ch. 687, § 2 (emergency, effective April 15, 1982); P.L. 1987, ch. 737, § A-2 (effective March 1, 1989). In the Statement of Fact associated with the bill, the Legislature implicitly acknowledged that the municipal officers possessed gatekeeping authority by indicating that the purpose of the amendment was to *limit* that authority. L.D. 2010, Statement of Fact (110th Legis. 1982). By allowing petitioners to ask that a charter commission be established if the municipal officers determined that a change proposed as an amendment was actually a revision, the statute as amended would stop municipal officers from failing to consider the proposal at all. *See id.*

supports that finding. FEP argues that even if the City Council possessed gatekeeping authority to determine whether a proposed modification put forward as an amendment actually constitutes a revision, the proposed modification at issue here cannot—as a matter of law—be characterized as a revision. These arguments reveal that the parties dispute whether the issue is dominated by questions of law or fact. The distinction is important because it affects the level of deference afforded to a municipal decision on appellate review. *See, e.g.*, *Osprey Fam. Tr.*, 2016 ME 89, ¶¶ 9-10, 141 A.3d 1114 (recognizing that we review findings only to ensure that they are supported by substantial evidence in the record); *Palian v. Dep't of Health & Hum. Servs.*, 2020 ME 131, ¶ 10, 242 A.3d 164 (recognizing that we review questions of law de novo).

[¶27] The meanings of the statutory terms "amendment" and "revision" are indeed issues of law requiring statutory interpretation and de novo review. *See White v. Fleet Bank of Me.*, 2005 ME 72, ¶ 16, 875 A.2d 680 ("We independently review the meaning of [undefined] statutory term[s]."); *Manirakiza v. Dep't of Health & Hum. Servs.*, 2018 ME 10, ¶ 7, 177 A.3d 1264. However, the determination of whether a particular petition proposes a charter amendment or a charter revision within the meaning of those statutory terms

is fact-based—it calls for the proposal to be evaluated not just in terms of its effect on the entire municipal charter but also in terms of its practical effect on existing municipal policies, practices, and operations. *See Bizier v. Town of Turner*, 2011 ME 116, ¶ 8, 32 A.3d 1048 ("Although interpretation of an ordinance is a question of law, we accord substantial deference to the Planning Board's characterizations and fact-findings as to what meets ordinance standards." (quotation marks omitted)); *see also infra* ¶¶ 32-34.

2. Charter "Amendment" and Charter "Revision" Pursuant to the Home Rule Act

[¶28] Having defined the framework for review, we turn first to the question of law, which we have not had occasion to address before: the difference between a charter "amendment" and a charter "revision" for purposes of the Home Rule Act.

[¶29] In common usage, the words "amendment" and "revision" have similar meanings—both involve a change short of complete replacement. Generally, however, courts presume that when a legislature uses different words within the same statute, it intends for the words to carry different meanings. *See* 2A Norman J. Singer & Shambie Singer, *Statutes & Statutory Construction* § 46:6 at 261 (7th ed. 2014) ("Different words used in the same, or a similar, statute are assigned different meanings whenever possible.").

18

Given that the Home Rule Act sets forth separate processes for adopting charter amendments and charter revisions, the Legislature plainly intended for the terms to have different meanings. According to Black's Law Dictionary, a revision is more substantial than an amendment: "revision" is defined as "[a] general and thorough rewriting of a governing document, in which the entire document is open to amendment," *Revision*, Black's Law Dictionary (11th ed. 2019), and "amendment" is defined as "[a] formal and usu[ally] minor revision or addition proposed or made to a statute, constitution, pleading, order, or other instrument; specif[ically], a change made by addition, deletion, or correction; esp[ecially], an alteration in wording," *Amendment*, Black's Law Dictionary (11th ed. 2019).

[¶30] Courts examining other states' home rule provisions have similarly understood a revision as representing a more significant change than an amendment. *See, e.g.*, *City of Denver v. N. Y. Tr. Co.*, 229 U.S. 123, 130-31, 143-44 (1913); *Albert v. City of Laconia*, 592 A.2d 1147, 1148-49 (N.H. 1991); *Kelly v. Laing*, 242 N.W. 891, 892-94 (Mich. 1932); *cf. Martinez v. Kulongoski*, 185 P.3d 498, 499-505 (Or. Ct. App. 2008) (discussing the distinction in the context of a voter-initiated ballot measure that added provisions to the state constitution); *Amador Valley Joint Union High Sch. Dist. v. State Bd. of*

*Equalization*, 583 P.2d 1281, 1284-86 (Cal. 1978) (same).  For example, in an instructive and well-reasoned opinion, the New Hampshire Supreme Court examined the distinction as set forth in a statutory scheme that was very similar to Maine's Home Rule Act.[9]  *See Albert*, 592 A.2d at 1148-49.  There, a modification to the city's charter changed how councilors and the mayor were elected and diminished the mayor's voting power, while "leav[ing] the City Council/City Manager form of government unchanged."  *Id.* at 1148.  The court looked to the differing statutory processes for the adoption of amendments and revisions, deducing that "the amendment process is directed toward specific changes to a city charter, whereas the revision process is less specific and contemplates the possible need for a general, more fundamental, change in a city's governmental structure."  *Id.* at 1149.  The court concluded that although the changes to the charter were "significant," they were "not of such a fundamental nature as to require a 'convention to examine the whole subject' and form of [the] city government."  *Id.* (quoting *Kelly*, 242 N.W. at 892).  The court explained:

> Where, as here, a group of citizens seek[s] to make specific changes
> to the council element of their council-city manager form of
> government, they should not be required to seek, nor should a city

---

[9] The court reviewed a trial court decision that included findings of fact issued after an evidentiary hearing.  *Albert v. City of Laconia*, 592 A.2d 1147, 1148 (N.H. 1991).

be burdened with, establishment of a charter commission, whose broad powers allow for a re-examination of the very nature of their city government.

*Id.*

[¶31] The Michigan Supreme Court explained the distinction in the following way:

"Revision" and "amendment" have the common characteristics of working changes in the charter and are sometimes used inexactly, but there is an essential difference between them. Revision implies a re-examination of the whole law and a redraft without obligation to maintain the form, scheme, or structure of the old. As applied to fundamental law, such as a constitution or charter, it suggests a convention to examine the whole subject and to prepare and submit a new instrument, whether the desired changes from the old be few or many. Amendment implies continuance of the general plan and purport of the law, with corrections to better accomplish its purpose. Basically, revision suggests fundamental change, while amendment is a correction of detail.

*Kelly*, 242 N.W. at 892. That court ultimately held that a "proposal to abolish the office of city manager requires revision of the charter." *Id.* at 894.

[¶32] Interpreting Maine's Home Rule Act, we agree that the differing processes for the adoption of charter amendments and charter revisions mean that the critical question is whether the proposed change is significant enough to require a (potentially) years-long inquiry into all aspects of the municipality's government. The distinction between an amendment and a revision, therefore, is essentially one of scope, in terms of both the breadth of

what would be affected and the depth of what would be altered. *See Martinez*, 185 P.3d at 504-05. In terms of breadth, a proposed amendment would not, if enacted, materially affect the municipality's implementation, in the course of its operations, of major charter provisions that are not mentioned in the proposed amendment. In terms of depth, an amendment would not, if enacted, make a profound and fundamental alteration in the essential character or core operations of municipal government. If a petition proposes a change to the charter that is either so broad or so profound (or both) as to justify a revisitation of the entire charter by a charter commission, the proposal is for a revision.

[¶33] Because each municipality's charter is unique and the Home Rule Act contemplates a broad spectrum of potential modifications, it is of critical importance that the municipal officers—while exercising gatekeeping authority to implement the inhabitants' home rule power—examine how the specific proposal at issue would, if adopted, interact with the terms of the existing charter and the municipality's operations under the existing charter. In addition to considering the breadth of what would be affected and the depth of what would be altered, municipal decision makers must heed the Legislature's directive that the Home Rule Act, "being necessary for the welfare

of the municipalities and their inhabitants, shall be liberally construed to accomplish its purposes." 30-A M.R.S. § 2109. The Home Rule Act's stated purpose is to "implement," 30-A M.R.S. § 2101, the "power" of "[t]he inhabitants of any municipality" to "alter and amend their charters on all matters, not prohibited by Constitution or general law, which are local and municipal in character," Me. Const. art. VIII, pt. 2, § 1.

[¶34] Given that whether a particular charter proposal would be an amendment or a revision focuses on the proposal's effect on the current municipal charter and operations, the municipal officers' adjudication of that question is highly fact-specific. To enable judicial review, the adjudication needs to include findings of fact and, to the extent necessary, conclusions of law explaining the municipal officers' reasoning. *See Christian Fellowship & Renewal Ctr. v. Town of Limington*, 2001 ME 16, ¶ 15, 769 A.2d 834 ("[T]here cannot be meaningful judicial review of agency decisions without findings of fact.").

3. The City Council's Decision

[¶35] The City argues primarily that the record supports characterizing the proposed modification at issue here as a proposed charter revision for two reasons: (1) by requiring the City to "sufficient[ly]" fund the public campaign

financing program, the modification would interfere with the City Manager's fundamental duties, which include managing the City's finances, and (2) by requiring the City to "sufficient[ly]" fund the public campaign financing program, the modification would conflict with the existing charter provision that vests "[t]he administration of all the fiscal, prudential, and municipal affairs of the City of Portland" in the City Council because the City Council would be required to allocate funds to the program that it might otherwise allocate to some other public function. FEP disagrees.

[¶36] The City's reasoning, however, is set forth only in its briefing and cannot be found in any actual findings of fact or conclusions of law expressed by the City Council. The City's attorney's memorandum to the City Council set forth reasons why, in the attorney's opinion, the City Council should not treat the petition as an amendment, but the City Council did not adopt that reasoning in any decision. The City Council's only decisions took the form of the three non-unanimous votes—not to submit FEP's petition to the voters as an amendment, not to treat the petition as requesting a charter commission, and to table the petition indefinitely. No written decision was adopted. Although the City contends that "the [City] Council *found as a fact* that the [petition] proposed a change to the City's [c]harter so fundamental that, if adopted, it

would substantially disrupt the [c]harter by removing the City Council's control over the 'administration of all fiscal, prudential, and municipal affairs of the City'" (emphasis added), the record contains no such finding by the City Council. Instead, the City relies on what its attorneys have extrapolated from the City Council's votes or the statements of individual councilors during debate.

[¶37] The record includes transcripts of the meetings at which members of the City Council debated and discussed the questions before them, but we can neither infer that any particular comment represents the decision of the City Council nor deduce the City Council's reasoning based on the comments as a whole. *See, e.g.*, *Comeau v. Town of Kittery*, 2007 ME 76, ¶¶ 9-13, 926 A.2d 189 (deciding that findings were insufficient for appellate review where a town planning board "designated the minutes of the meetings to serve as findings"); *Christian Fellowship & Renewal Ctr.*, 2001 ME 16, ¶ 7, 769 A.2d 834 ("Recitation of the parties' positions or reiterations of the evidence presented by the parties do not constitute findings and are not a substitute for findings.").

[¶38] The petition requesting a vote on the question of whether to modify Portland's charter to provide public funding for municipal election candidates does not, on its face, purport to propose a fundamental change in

the form, structure, or nature of the City's government.[10]  If the City Council indeed deems the petition to propose a revision rather than an amendment of the charter, a statement of its basis in law and fact for doing so is essential to meaningful judicial review.  Without such a statement, neither the Superior Court nor we can determine whether the rejection of the petition involved legal error, an abuse of discretion, or findings not supported by substantial evidence in the record.  *See Osprey Fam. Tr.*, 2016 ME 89, ¶ 9, 141 A.3d 1114; *Christian Fellowship & Renewal Ctr.*, 2001 ME 16, ¶¶ 15-16, 769 A.2d 834; *Chapel Rd. Assocs. v. Town of Wells*, 2001 ME 178, ¶ 10, 787 A.2d 137.  Rather than attempt to infer what findings and conclusions might underlie the City Council's votes,[11] we must vacate the judgment and remand to the trial court for further remand to enable the City Council to rectify the omission.  *See Christian Fellowship & Renewal Ctr.*, 2001 ME 16, ¶ 16, 769 A.2d 834 ("[T]he weight of authority in other jurisdictions supports a remand instead of an assumption that an agency

---

[10]  As the City's attorney pointed out to the City Council, the proposed charter change would impose a funding mandate, but it is not obvious why the mandate would have the sweeping impact on City government that the attorney attributed to it.

[11] We have stated that "[i]n some cases the subsidiary facts may be obvious or easily inferred from the record and the general factual findings, and a remand would be unnecessary." *Christian Fellowship & Renewal Ctr. v. Town of Limington*, 2001 ME 16, ¶ 19, 769 A.2d 834.  This is not one of those cases because the City Council made no "general factual findings" at all and the "subsidiary facts"—those concerning the interactions between the proposed charter modification and the existing charter—are not at all obvious. *See id.*; *cf. Wells v. Portland Yacht Club*, 2001 ME 20, ¶¶ 10-11, 771 A.2d 371.

has found facts to support its conclusion when its findings are inadequate for review."); *Chapel Rd. Assocs.*, 2001 ME 178, ¶ 13, 787 A.2d 137 ("The remedy for an agency's failure to make sufficient and clear findings of fact is a remand to the agency for findings that permit meaningful judicial review." (alterations omitted) (quotation marks omitted)).

The entry is:

> Judgment vacated. Remanded to the Superior Court with instructions to remand to the Portland City Council for further proceedings consistent with this opinion.

Benjamin Gaines, Esq., Gaines Law, LLC, Portland, and John R. Brautigam, Esq. (orally), John R. Brautigam, Esq., LLC, Falmouth, for appellant Fair Elections Portland, Inc., et al.

Jennifer L. Thompson, Esq. (orally), and Danielle West Chuhta, Esq., City of Portland, Portland, for appellee City of Portland

Cumberland County Superior Court docket number AP-2019-33
FOR CLERK REFERENCE ONLY