MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2024 ME 48
Docket:        Han-23-371
Argued:        May 7, 2024
Decided:       July 2, 2024

Panel:         STANFILL, C.J., and MEAD, HORTON, CONNORS, LAWRENCE, and DOUGLAS, JJ.

MICHAEL GOOD et al.

v.

TOWN OF BAR HARBOR

HORTON, J.

[¶1]   In *Fair Elections Portland, Inc. v. City of Portland* (*FEP I*), we construed Maine's Home Rule Act, 30-A M.R.S. §§ 2101-2109 (2024), to determine whether, and in what circumstances, municipal officials must convene a charter commission to review a petition by voters to alter the terms of a municipal charter.  *FEP I*, 2021 ME 32, ¶ 21, 252 A.3d 504.  We focused there on the difference between a "revision" of a charter, for which the Home Rule Act requires consideration by a charter commission, and an "amendment" of a charter, for which the Home Rule Act authorizes submission directly to voters.  *Id.* ¶ 23; *see* 30-A M.R.S. § 2104(1), (4).  We now focus on a different phase of the municipal charter process and consider when a municipality may treat the recommendations of its charter commission as constituting "minor

modifications" to be presented to the voters in separate questions under 30-A M.R.S. § 2105(1)(A) rather than as collectively constituting a "revision" to be voted upon as a package in a single question under section 2105(1).

[¶2]  Here, the Town of Bar Harbor appeals from a summary judgment entered by the Superior Court (Hancock County, *Anderson, J.*) in favor of Michael Good and ten other Town voters (collectively Good) nullifying several purportedly "minor modifications" to the Town's charter because they were submitted to the voters in separate questions and not submitted as a single "revision" of the charter and also because of procedural irregularities in how they were developed and submitted.  We conclude that the Town acted lawfully in submitting the charter commission's proposals to the voters in the form of separate questions and that none of the claimed procedural irregularities nullifies the vote.  We therefore vacate the judgment and remand for the court to enter a judgment for the Town on Good's complaint.

## I. BACKGROUND

[¶3]  The undisputed facts material to this appeal are drawn from the parties' properly supported statements of material facts.  *See Blue Yonder, LLC v. State Tax Assessor*, 2011 ME 49, ¶¶ 3, 7, 17 A.3d 667.  At a special town meeting in November 2018, the people of the Town voted to create a charter

commission. *See* 30-A M.R.S. § 2102(2)-(5). At the same meeting, the voters elected six members to the charter commission. *See id.* § 2103(1)(A)(1) (authorizing a municipality to elect six voting members "in the same manner as the municipal officers, except that they must be elected at-large and without party designations"). The town council appointed three members. *See id.* § 2103(1)(B).

[¶4] The charter commission issued a report of its recommendations dated February 28, 2020. *See id.* § 2103(5)(D), (E). It recommended changes to nineteen areas "within the current structure of the Charter." It recommended that its proposed "modifications," representing a "vision for the future of [the] town's governance," be grouped and presented to the voters in nine separate warrant articles. *See id.* § 2105(1)(A) ("If the charter commission, in its final report under section 2103, subsection 5, recommends that the present charter continue in force with only minor modifications, those modifications may be submitted to the voters in as many separate questions as the commission finds practicable.").

[¶5] The town council voted on April 7, 2020, to accept the report and place the proposed changes before the voters at a special meeting to be convened in November 2020 rather than at the regular town meeting

scheduled for June 2020.  In August 2020, the warrant committee discovered that proposed language depriving the voters of the exclusive power to amend the land use ordinance was mistakenly included in article 3 instead of article 4 of the town meeting warrant.  The warrant committee and town council authorized changes to place the pertinent language in article 4, and the town clerk corrected the error before the proposals went before the voters.

[¶6]  On September 1, 2020, the town council voted to recommend that the voters approve all nine articles.  At a special town meeting in November 2020, the voters passed all but one of the articles; the article that did not pass would have changed the duties of the Town's warrant committee.  The articles that passed

- authorized electronic voting at town meetings,

- allowed the town council to make procedural and minor changes to the land use ordinance by a two-thirds supermajority if recommended by the town planner to the planning board and approved by a two-thirds vote of the planning board after a public hearing,

- provided for school committee members to have staggered terms and for the town manager or a person designated by the town manager to be designated as the planning director,

- removed specific salaries for members of the town council and school committee and provided for those salaries to be set annually in the Town's budget,

- changed the budget development process,

- reduced the warrant committee membership from twenty-two members to fifteen and made other changes pertaining to that committee's composition and the filling of vacancies,

- changed the deadline for filing nomination petitions from forty-five to sixty days before the election, and

- added a public-hearing requirement to the initiative and referendum process.

[¶7] On December 1, 2020, Good filed a complaint seeking a declaratory judgment that the adopted modifications are null and void, in part because they were not "minor modifications" that could be submitted to the voters in separate questions.[1] *See* 30-A M.R.S. § 2105(1)(A). Good filed an amended complaint in December 2020 and a motion for leave to amend his complaint along with a second amended complaint in May 2021. The court (*Anderson, J.*) granted Good leave to amend his complaint and accepted his second amended complaint, which is the operative pleading here.

[¶8] In December 2021, Good moved for summary judgment on the complaint and filed a memorandum of law and statement of material facts referencing attached supporting evidence. *See* M.R. Civ. P. 56(a), (h)(1). The

---

[1] In September 2022, the court retroactively granted leave for Good to file the declaratory judgment action. *See* 30-A M.R.S. § 2108(2) (2024) (authorizing a court to grant ten voters leave to petition for a declaratory judgment to enforce the home rule statutes). The Town has noted but waived an argument that the proper vehicle for judicial review was through a petition for review of government action under section 2108(3) and M.R. Civ. P. 80B. To the extent that Good has raised procedural issues, we consider those issues by applying the standard of review set forth in section 2108(3), as detailed in paragraphs 33-37 of this opinion.

6

Town opposed the motion and filed a cross-motion for summary judgment. It submitted an opposing memorandum and statement of material facts and stated additional facts, referencing supporting evidence. *See* M.R. Civ. P. 56(h)(2). Good filed a reply memorandum and reply statement of material facts, *see* M.R. Civ. P. 56(h)(3), also asserting additional facts.[2] The Town filed a response to Good's reply and his additional facts.

[¶9] On October 31, 2022, the court denied the Town's motion for summary judgment and granted Good's motion for summary judgment, *see* M.R. Civ. P. 56(c), reasoning that the proposed changes to the charter were not minor modifications because they would profoundly alter the essential character of the charter. The court concluded that the improper presentation in separate questions substantially affected the charter revision because the outcome—with all but one proposal passing—could not have resulted from a single up-or-down vote on all proposals. The court did not reach, or in light of its ruling need to reach, Good's alternative arguments that the vote should be set aside because of procedural irregularities in the process that preceded the vote.

---

[2] Rule 56(h)(3) of the Maine Rules of Civil Procedure does not authorize the assertion of additional facts in a reply statement of material facts. Nor does it authorize a "response" to the reply statement of material facts. Neither party takes issue with these procedural irregularities on appeal, likely because of the existence of cross-motions for summary judgment.

[¶10]  On November 14, 2022, the Town moved to alter or amend the judgment.  *See* M.R. Civ. P. 59(e).  It argued that the changes were minor relative to the charter as a whole and that the judgment, if not otherwise altered, should authorize the resubmission of the question to the voters without the provision that the voters rejected.

[¶11]  The court (*Larson, J.*) denied the motion in an order entered on September 21, 2023, concluding that the court (*Anderson, J.*) had already ruled on the issues that the motion raised and that allowing the Town to submit to the voters an *altered* proposal—omitting the portion that the voters rejected— would not be a curative procedure that the court could grant under 30-A M.R.S. § 2108(4).

[¶12]  The Town timely appealed from this judgment.  *See* 14 M.R.S. § 1851 (2024); M.R. App. P. 2B(c)(1), (2)(D).[3]

---

[3]  The trial court's order granting Good's motion for summary judgment and denying the Town's cross-motion for summary judgment did not include an actual judgment indicating the relief granted, although it resolved all pending claims and was clearly intended and understood by the court and parties to constitute a final judgment.  An order that simply grants a motion, even a dispositive motion for summary judgment, without an award of judgment describing the relief granted, is not the entry of final judgment.  *See Murphy v. Maddaus*, 2002 ME 24, ¶ 9 n.3, 789 A.2d 1281 ("The bare entry of an order granting a motion for summary judgment but lacking a description of relief . . . does not indicate the substance of the court's judgment required by [M.R. Civ. P.] 79(a) and thus is not an effective entry of judgment pursuant to [M.R. Civ. P.] 58."); *see also Est. of Libby*, 2018 ME 1, ¶ 10, 176 A.3d 1287; *Foremost Ins. Co. v. Levesque*, 2005 ME 34, ¶ 5 & n.2, 868 A.2d 244.  Although the record lacks an express entry of final judgment, however, we consider the appeal rather than remanding for entry of a final judgment because the issues raised are "clearly presented and neither party has questioned the sufficiency of the court's order."  *Est. of Libby*, 2018 ME 1, ¶ 11, 176 A.3d 1287

## II. DISCUSSION

[¶13]  We begin by considering the legality of the Town's presentation of nine separate warrant articles to the voters.  We then consider Good's arguments that, even if the proposals were lawfully presented in separate warrant articles, other procedural irregularities require us to set aside the vote. In conducting our analysis, we review de novo, for errors of law, the Superior Court's summary judgment entered upon facts that are not in dispute as to any material issues.  *Blue Yonder*, 2011 ME 49, ¶ 7, 17 A.3d 667.

### A.    Presentation of Separate Questions to Voters

[¶14]  The determination of whether a charter commission's proposals are "minor modifications" is—like a determination of whether a proposal is an amendment or a revision—a mixed question of law and fact.  *See Fair Elections Portland, Inc. v. City of Portland* (*FEP II*), 2023 ME 9, ¶ 15, 288 A.3d 1208. Because the relevant facts here are not in dispute, we review de novo whether the Town's conduct violated section 2105(1).  *See Blue Yonder*, 2011 ME 49, ¶ 7, 17 A.3d 667.

---

(quotation marks omitted).  In such limited circumstances, judicial economy may, as here, weigh in favor of ruling on the appeal despite the lack of a final judgment.  *See id.*

### 1. Statutory Framework

[¶15]  The Maine Constitution establishes municipal home rule: "The inhabitants of any municipality shall have the power to alter and amend their charters on all matters, not prohibited by Constitution or general law, which are local and municipal in character.  The Legislature shall prescribe the procedure by which the municipality may so act."  Me. Const. art. VIII, pt. 2, § 1.

[¶16]  The Home Rule Act enacted in accordance with the Maine Constitution authorizes the establishment of a charter commission to consider adopting a municipal charter or revising an existing charter.  *See* 30-A M.R.S. §§ 2102-2103.  The process for establishing a charter commission may be initiated either by the municipal officers or by voters.  *See* 30-A M.R.S. § 2102(1), (2).  Whichever way the process is initiated, the voters must decide through a municipal election whether a charter commission will be formed.  *Id.* § 2102(5).

[¶17]  Charter amendments—as opposed to charter revisions—may be presented to the voters directly *without* referral to a charter commission.  *Id.* § 2104(1), (2).  These amendments, similarly, may be proposed either by the municipal officers or by voters.  *Id.*  An amendment submitted by voters must be treated as "a request for a charter commission" if the municipal officers

"determine with the advice of an attorney that the proposed amendment would constitute a revision of the charter." *Id.* § 2104(4). As we held in *FEP I*, the municipal officers must, to distinguish between a revision and an amendment, "examine how the specific proposal at issue would, if adopted, interact with the terms of the existing charter and the municipality's operations under the existing charter," considering both "the breadth of what would be affected and the depth of what would be altered." 2021 ME 32, ¶ 33, 252 A.3d 504.

[¶18] We are now asked to construe the Home Rule Act provision, 30-A M.R.S. § 2105, that governs a different phase of the procedure for altering a municipal charter—the process that applies after a charter commission has been formed and has issued its report and recommendation. This provision distinguishes between (1) a charter commission's recommendation for either the adoption of a new charter or the comprehensive revision of an existing charter and (2) a charter commission's recommendation of "only minor modifications" to a charter that "continue[s] in force." *Id.* § 2105(1). "[I]n the case of a charter revision or a charter adoption," section 2105(1) requires that the entire recommendation be submitted to the voters in a single question: "'Shall the municipality approve the (charter revision) (new charter) recommended by the charter commission?'" *Id.* However,

> [i]f the charter commission, in its final report under section 2103, subsection 5, recommends that the present charter continue in force *with only minor modifications*, those modifications may be submitted to the voters in as many separate questions as the commission finds practicable. The determination to submit the charter revision in separate questions under this paragraph and the number and content of these questions must be made by a majority of the charter commission.

30-A M.R.S. § 2105(1)(A) (emphasis added). The question before us is whether the Town violated the statute by treating the charter commission's proposals as "minor modifications" under paragraph A and presenting them to the voters in separate articles.

### 2. "Minor Modifications"

[¶19] In interpreting a statute, we look first to the plain language of the statute, interpreting it to avoid "absurd, illogical, or inconsistent results." *FEP I*, 2021 ME 32, ¶ 22, 252 A.3d 504 (quotation marks omitted). In doing so, we consider the statute's specific language "in the context of the whole statutory scheme" and give "due weight to design, structure, and purpose as well as to aggregate language." *Id.* (quotation marks omitted). "[O]nly if the statute is ambiguous will we look beyond that language to examine other indicia of legislative intent, such as legislative history." *Express Scripts Inc. v. State Tax Assessor*, 2023 ME 68, ¶ 22, 304 A.3d 239 (quotation marks omitted).

[¶20]  We have not construed the term "minor modifications," though in *FEP I* we opined on the difference between charter revisions, which can be presented to voters only on the recommendation of a charter commission, and charter amendments, which are submitted to the voters directly.  2021 ME 32, ¶¶ 26-34, 252 A.3d 504; *see* 30-A M.R.S. §§ 2104, 2105.  We considered dictionary definitions in drawing distinctions between revisions and amendments, with a revision defined as "[a] general and thorough rewriting of a governing document, in which the entire document is open to amendment," and an amendment defined as "[a] formal and usu[ally] minor revision or addition proposed or made to a statute, constitution, pleading, order, or other instrument."  *FEP I*, 2021 ME 32, ¶ 29, 252 A.3d 504 (quotation marks omitted).  Based on these definitions and decisions in other jurisdictions that cast "a revision as representing a more significant change than an amendment," *id.* ¶¶ 30-31, we held that the critical question was "whether the proposed change is significant enough to require a (potentially) years-long inquiry into all aspects of the municipality's government," *id.* ¶ 32.

[¶21]  More particularly, we held that the scope of a revision is broader and deeper than the scope of an amendment.  *Id.*  "In terms of breadth, a proposed amendment would not, if enacted, materially affect the municipality's

implementation, in the course of its operations, of major charter provisions that are not mentioned in the proposed amendment. In terms of depth, an amendment would not, if enacted, make a profound and fundamental alteration in the essential character or core operations of municipal government." *Id.* "If a petition proposes a change to the charter that is either so broad or so profound (or both) as to justify a revisitation of the entire charter by a charter commission, the proposal is for a revision." *Id.*

[¶22] Rather confusingly, the statute designates any recommendation by a charter commission as a "revision," even if it is clearly not a rewrite of the charter but only a "minor modification" that may be recommended in a separate question. 30-A M.R.S. § 2105(1)(A) ("The determination to submit the charter revision in separate questions under this paragraph and the number and content of these questions must be made by a majority of the charter commission."). Here, there is no question that the changes are revisions in that they were developed by the charter commission and submitted to the town council as provided in 30-A M.R.S. § 2103(5). The precise question is what types of "revisions" resulting from a charter commission's review of an existing charter are "minor modifications" that may be presented in separate questions to the voters. *Id.* § 2105(1)(A).

14

[¶23] The answer to that question turns on what the terms "minor" and "modifications" mean. The dictionary definitions of the terms provide little assistance. *See Minor*, American Heritage Dictionary of the English Language (5th ed. 2016) ("Lesser or smaller in amount, extent, or size"); *Modification*, American Heritage Dictionary of the English Language ("A change or a result produced by modifying"); *Modify*, American Heritage Dictionary of the English Language ("To change in form or character; alter"); *see also Modification*, Black's Law Dictionary (11th ed. 2019) ("A change to something; an alteration or amendment").

[¶24] Because the statutory language is ambiguous, we may look to extrinsic evidence of legislative intent. *See Express Scripts Inc.*, 2023 ME 68, ¶ 22, 304 A.3d 239. The provision now codified as amended at section 2105(1)(A) was enacted in 1985 as part of former Title 30. *See* P.L. 1985, ch. 224, § 2 (effective Sept. 19, 1985) (codified at 30 M.R.S.A. § 1915(1)(A) (Supp. 1985)). The initially proposed bill sought to avert "the possibility that a voter may vote against an entire charter revision only because of a single, controversial part of that revision." *See* L.D. 930, Statement of Fact, at 3 (112th Legis. 1985). The bill proposed that a charter commission "designate a 'core' proposal that contains all of the charter provisions that are necessary to the

effective implementation of the proposed charter" and then designate the provisions that could instead be voted on independently. *Id.* The point was to "allow[] the commission to isolate particularly sensitive issues that can be separated from the charter revision 'core' and which, if included in the 'core,' might jeopardize passage of several important and generally popular provisions." *Id.* at 4.

[¶25] The initial bill was replaced with a new draft that the Legislature ultimately enacted. *See* L.D. 1530 (112th Legis. 1985). Rather than providing for the delineation of "core" and separable revisions, the bill provided, "If the charter commission, in its final report . . . recommends that the present charter continue in force with *only a few modifications*, those modifications may be submitted to the voters in as many separate questions as the commission finds practicable." *Id.* § 2 (emphasis added). The Statement of Fact for the bill provides some guidance about the Legislature's intent:

> This new draft allows a charter commission to submit a proposed charter revision to the voters in more than one question only when the commission recommends that only a few modifications be adopted. Present law requires a charter revision to be submitted as only one question, regardless of the extent of the changes recommended by the charter commission. If only a few modifications are recommended by the commission, this new draft allows the commission to decide, by majority vote, if the charter modifications are to be submitted as separate questions and the number and content of those questions. The commission could

16

group together some of the modifications into a single question for convenience or submit them all as individual questions.

L.D. 1530, Statement of Fact (112th Legis. 1985).

[¶26]  The statute was then amended as part of a broad effort to recodify the statutes governing municipal home rule as proposed in the Report of the Joint Standing Committee on Local and County Government on the Revision of Title 30 (Dec. 1986).  The report suggested that three bills be drafted—one to address the "flawed implementation of the concept of municipal home rule in Maine,"[4] one to correct substantive defects in the statutes, and one to "rewrite and reorganize the statutes in Title 30 to clarify their intent and to make the Title easier to use and understand."  *Id.* at ii.

[¶27]  The amendment to the statute at issue here was passed as part of the final, third bill in this series, which recodified former Title 30 as Title 30-A. *See* P.L. 1987, ch. 737, § A-2 (effective Mar. 1, 1989); L.D. 2538 (113th Legis.

---

[4] The report explained,

> The statutory grant of home rule authority in 30 M.R.S.A. § 1917 [(1978)] [now codified, as subsequently amended, at 30-A M.R.S. § 3001 (2024)], stands on its own as a grant of power to municipalities to enact local legislation on any legal subject unless the Legislature has acted to restrict that power, either expressly or by clear implication.  The result is that under this statute, the Legislature no longer has to specifically authorize individual subjects of permissible municipal legislative action. It is presumed that a municipality already has the authority to act under section 1917, subject only to the Legislature's ability to restrict that authority through legislation.

Report of the Joint Standing Committee on Local and County Government on the Revision of Title 30, at 4 (Dec. 1986).

1988). The statutory language then enacted remains in effect today. *See* 30-A M.R.S. § 2105(1)(A).

[¶28] The Statement of Fact for the enacted bill indicated, "No attempt was made to change the substance of the laws in this revision and no such change is intended by this bill. This bill is intended solely to clarify existing law and to make it easier to use and understand the laws governing local government in the State." L.D. 2538, Statement of Fact (113th Legis. 1988).

[¶29] Thus, we are guided by the legislative intent to grant a charter commission the authority, when only limited modifications are being proposed, "to decide, by majority vote, if the charter modifications are to be submitted as separate questions and the number and content of those questions." L.D. 1530, Statement of Fact (112th Legis. 1985). Although the statute does not expressly equate "minor modifications" to charter "amendments," it treats them similarly in permitting them to be presented in separate questions to the voters rather than in the single question required for a revision that involves a "general and thorough rewriting" of the charter, *FEP I*, 2021 ME 32, ¶ 29, 252 A.3d 504 (quotation marks omitted). It follows that one common characteristic of a proposed "minor modification" and a proposed "amendment" is that, even if enactment of the proposal would have a significant effect on a particular

component of a charter, it can be presented to voters in a separate question because it is sufficiently narrow in its effect to enable separate consideration by the voters without affecting the functionality of the charter as a whole. In contrast, a more sweeping "revision" may include interdependent parts that cannot be separately enacted or rejected in piecemeal fashion without rendering the charter potentially unworkable or inconsistent if some are enacted and others are not, and that accordingly should be presented as a package to the voters in a single question. *FEP I*, 2021 ME 32, ¶¶ 32-33, 252 A.3d 504.

[¶30] Here the charter commission proposed not a wholesale rewriting of the charter but a set of discrete proposals in nineteen areas "within the current structure of the Charter" that were grouped by subject matter into nine articles to be presented to the voters. Given the clear legislative intent to expand the authority of municipalities to provide voters with more choices than a single question would allow, we conclude that this action is consistent with the statute's direction that a municipality may present proposed charter modifications to the voters in separate questions when the proposals reflect limited changes rather than a major, integrated revision of the charter in its entirety. As the Legislature has stated about the chapter governing home rule,

"This chapter, being necessary for the welfare of the municipalities and their inhabitants, shall be liberally construed to accomplish its purposes." 30-A M.R.S. § 2109. Thwarting the charter commission's intent in this situation would not amount to a liberal construction to accomplish section 2105(1)(A)'s purpose. We also accord a degree of deference to the municipal officers' determination as to the nature and effect of a proposed charter change, which is a mixed question of law and fact. *Cf. FEP I*, 2021 ME 32, ¶ 27, 252 A.3d 504 (stating that a charter change "proposal [is] to be evaluated not just in terms of its effect on the entire municipal charter but also in terms of its practical effect on existing municipal policies, practices, and operations"); *see also id.* ¶¶ 33-34 (explaining the fact-based decisions that the municipal officers must make).

[¶31] Although Good argues that most of the "minor modifications" were in fact comprehensive changes that should have been submitted as a package in a single question, the record does not by any means compel that conclusion.[5]

---

[5] For example, Good argues that the enactment of a reduction in the size of the Town's warrant committee from twenty-two to fifteen members will compromise the committee's ability to function, especially given that another proposal that would have reduced the duties of the committee was not enacted. However, any conflict is more theoretical than practical, and the voters evidently disagreed with Good's assessment. He also asserts that a proposal authorizing the town council to adopt land use ordinance amendments was too sweeping in its effect to be a "minor modification" because the Town's voters had always had the exclusive authority to amend such ordinances. But the proposal, which was enacted, limits the town council's authority to enacting ordinance changes that are "procedural or minor [and] seek[] to correct, modify, or reconcile inconsistencies, contradictions, and errors or to bring the land use ordinance into compliance with state statutes pertaining to municipal zoning."

The charter commission explicitly indicated that it was proposing modifications "within the current structure of the Charter" that should be presented to the voters separately and not as a complete, integrated revision of the charter. The changes summarized above in paragraph 6 do not so fundamentally alter the charter that a court can declare as a matter of law that they amount to a charter revision.

[¶32] Based on the summary judgment record before us, we conclude that the charter commission acted legally in determining that its recommendations constituted minor modifications and proposing that they be submitted to the voters in nine separate articles, and likewise that the Town and its warrant committee acted legally in presenting the commission's recommendations to the voters in separate articles. We therefore conclude that the Superior Court erred in setting aside the modifications to the charter that the voters approved.

## B.   Other Procedural Issues

[¶33] Because we hold that the Superior Court erred in concluding that the proposals had to be submitted in a single question to the voters, we must consider Good's alternative arguments that he was entitled to a summary judgment declaring the results of the election invalid. He argues that (1) the

revision should have been placed on the June 9, 2020, town meeting warrant rather than the November 2020 special-town-meeting warrant; (2) the Town improperly elected the charter commission members in a special town meeting in November 2018 when it should have done so "in the same manner as the municipal officers," 30-A M.R.S. § 2103(1)(A)(1), at the annual town meeting in June 2019; and (3) the Town improperly changed the questions after a mistake was noted in the report from the charter commission.

[¶34]  We review each claim of error under the standard set forth by the Legislature: "No charter adoption, revision, modification or amendment may be found invalid because of any procedural error or omission unless it is shown that the error or omission materially and substantially affected the adoption, revision, modification or amendment."  30-A M.R.S. § 2108(3); *see also Lamb v. Town of Farmington*, 2004 ME 50, ¶ 13, 846 A.2d 333 (noting the "drastic" nature of a remedy that "overturn[s] the results of an election").  Thus, we will determine whether, on the undisputed summary judgment record, there was any procedural error or omission, and if there was such an error or omission, whether it "materially and substantially affected" the modification of the charter.  30-A M.R.S. § 2108(3).

### 1.    Date of Election

[¶35]  The statute governing the submission of charter modifications to voters provides, "When the final report is filed, the municipal officers shall order the proposed new charter or charter revision to be submitted to the voters at the next regular or special municipal election held at least 35 days after the final report is filed." 30-A M.R.S. § 2103(6).[6]  The summary judgment record indicates that the charter commission issued its report on February 28, 2020, and that although the next town meeting was scheduled for June 2020, the town council voted on April 7, 2020, to submit the proposals to the voters in November 2020.  The people of Maine were under restrictions resulting from the COVID-19 pandemic at that time.  *See* Me. Exec. Order No. 14 FY 19/20 (Mar. 18, 2020); Me. Exec. Order No. 28 FY 19/20 (Mar. 31, 2020).  Thus it is understandable that on April 7, 2020, a motion to present the charter proposals on the November ballot prevailed.  There has been no suggestion in the summary judgment record that the delay worked a hardship on voters, and indeed it appears that the delay resulted in more voters being able to vote on the proposals than were present at the June 2020 meeting, for which the election portion of the meeting was ultimately held in July.  Even assuming

---

[6] Reading this statute in conjunction with 30-A M.R.S. § 2105(1)(A) (2024), we understand it to apply as well to "minor modifications" proposed by a charter commission in separate questions.

without deciding that the commission's recommendations should have been presented to the voters in June 2020 rather than in November 2020, we see no evidence that the delay had any material and substantial adverse effect on the outcome sufficient to justify invalidating the vote. *See* 30-A M.R.S. § 2108(3).

### 2. Election of Charter Commission Members

[¶36] By statute, six of the voter members of a charter commission "are elected in the same manner as the municipal officers, except that they must be elected at-large and without party designations." 30-A M.R.S. § 2103(1)(A)(1). Good argues that the manner for electing municipal officers is provided by the Town's charter. Good, however, did not submit a copy of the charter in effect at the relevant time to the Superior Court. "We have consistently held that the existence of municipal ordinances must be proved and that they are not subject to judicial notice." *Odiorne Lane Solar, LLC v. Town of Eliot*, 2023 ME 67, ¶ 16 n.9, 304 A.3d 253 (quotation marks omitted). We apply the same rule to the charter at issue here, especially given that we know that the current charter differs in some respects from that which was in effect at the time the members were elected. Even if we were to regard the legislative formatting in the charter commission's markup as authoritative, however, we would not—on the record before us—hold that any procedural flaw in the timing of the members' election

"materially and substantially affected" the ultimate vote on the charter modifications. *See* 30-A M.R.S. § 2108(3).

### 3.     Alteration of Questions to Correct a Mistake

[¶37]  Good contends that the charter commission improperly took steps to correct a clerical error in its proposal more than thirty days after it submitted its report, at a time when the commission had ceased to exist. *Id.* § 2103(8)(A). Specifically, the charter commission chair realized that certain recommended changes regarding land use ordinances were mistakenly grouped in the article that contained a proposal for electronic voting instead of in the article relating to land use ordinances.  The mistake was obvious, and the solution to it equally so—moving the recommendations into the same article as the other recommendations relating to land use ordinances.  It was the town council and the warrant committee, not the charter commission, that ultimately allowed the move after the presentation of the final charter commission report.   Their decision to do so ensured that the voters were considering the recommendations regarding land use ordinances together, and their fix of what could have been a source of voter confusion does not amount to a procedural error as contemplated by 30-A M.R.S. § 2108(3).

The entry is:

> Judgment vacated. Remanded for the entry of a summary judgment for the Town on Good's complaint.

_____

Jonathan P. Hunter, Esq. (orally), and Stephen W. Wagner, Esq., Rudman Winchell, Bangor, for appellant Town of Bar Harbor

Maxwell Coolidge, Esq. (orally), Franklin, for appellees Michael Good et al.

Jennifer L. Thompson, Esq., Maine Municipal Association, Augusta, for amicus curiae Maine Municipal Association

Hancock County Superior Court docket number CV-2020-45
FOR CLERK REFERENCE ONLY