MAINE SUPREME JUDICIAL COURT                                 Reporter of Decisions
Decision:     2023 ME 9
Docket:       Cum-22-91
Argued:       November 3, 2022
Decided:      January 26, 2023

Panel:        STANFILL, C.J., and MEAD, JABAR, HORTON, CONNORS, and LAWRENCE, JJ.

## FAIR ELECTIONS PORTLAND, INC., et al.

### v.

## CITY OF PORTLAND

JABAR, J.

[¶1]  Fair Elections Portland, Inc., and ten individual voters (collectively, FEP) appeal from a Superior Court order (Cumberland County, *McKeon, J.*) denying their M.R. Civ. P. 80B petition for review of the City of Portland's decision to classify their proposed modification to the Portland City Charter, which would establish a public financing mechanism for city elections, as a "revision" of, instead of an "amendment" to, the charter.  We dismiss the appeal as moot.

### I.  BACKGROUND

[¶2]  The classification of a proposed charter modification as a revision rather than an amendment is significant because under the Home Rule Act,

30-A M.R.S. §§ 2101-2109 (2021),[1] a proposed amendment must be submitted directly to the voters in a municipal election, *see* 30-A M.R.S. §§ 2104(1)-(2), 2105(2), whereas a proposed revision can be submitted to the voters only upon recommendation of a charter commission, *see* 30-A M.R.S. §§ 2102(1)-(2), 2103(5)(D), (6), 2105(1). *See Fair Elections Portland, Inc. v. City of Portland* (*FEP I*), 2021 ME 32, ¶ 4, 252 A.3d 504.

[¶3]  After classifying FEP's proposed charter modification as a revision, the City formed a charter commission to, inter alia, consider the proposed mechanism for public campaign financing.  The Charter Commission then recommended a modification to the City Charter establishing a mechanism for public campaign financing that was similar to the one proposed by FEP and that was put before voters in November 2022.  Voters approved the measure, which received 65.3% of the vote.  City of Portland, *General Municipal Election on 11/8/2022: Referendum Results*, https://content.civicplus.com/api/assets/ dec12b09-575a-4da0-94bb-db63f30f272d?cache=1800     [https://perma.cc/ E95N-RGZS] (last visited Jan. 17, 2023).

---

[1] Section 2102 of the Home Rule Act has been amended effective after the City Council voted not to send the proposed modification to the voters, but the amendments do not affect our analysis here. *See* P.L. 2019, ch. 149, §§ 1-2 (effective Sept. 19, 2019) (codified at 30-A M.R.S. § 2102(3)(B), (5)(A) (2021)).  For consistency, all citations to the Home Rule Act in this opinion are to the 2021 version of the statutes.

[¶4]  FEP's proposed charter modification reads as follows:

**Section 12.  Public Financing of Municipal Elections**

The city council shall establish and fund a mechanism providing public campaign funds to qualified candidates for mayor, city council, and school board.  The mechanism must provide sufficient funds to allow candidates who meet qualifying criteria to conduct competitive campaigns, must be voluntary, must limit the amount of private funds a candidate may raise, must only be available to candidates who demonstrate public support, and must be limited to candidates who enter into a binding agreement not to accept private contributions other than those allowed by the public funding program.  The mechanism must be available by the 2021 municipal elections.

[¶5]  The Charter Commission's proposed modification reads as follows:

**Section 12.  Public financing of municipal elections.**

The city council shall establish and fully fund a City of Portland Clean Election Fund (hereinafter, the "Clean Election Fund" or the "Fund") to provide public campaign funds to qualified candidates for elected municipal offices.  The Clean Election Fund must be available to candidates in municipal elections beginning in FY 2023-2024.  Candidate participation in the Clean Election Fund shall be voluntary.

Beginning in FY 2023-2024 to allow for implementation for the November 2023 election, the city council shall provide an independent allocation from the city's budget each year to ensure the Clean Election Fund is sustained at a level that facilitates competitive campaigns for participating candidates who meet qualifying criteria.  The Clean Election Fund shall be administered by the city clerk and the city council shall appropriate sufficient funds to ensure there are adequate resources, including paid staff, to effectively administer the Fund.

4

The city council shall maintain an ordinance directing the operation of the Clean Election Fund. The ordinance shall direct that the Clean Election Fund must:

(a) Limit the amount of private funds a participating candidate may raise;

(b) Be limited to candidates who
    i. demonstrate public support;
    ii. enter into a binding agreement stating that the candidate will not accept private contributions other than those which are permitted by the Clean Election Fund; and
    iii. agree to participate in at least one (1) city-sponsored forum or voter education event.

(c) Require that all unused funds from a participating candidate's campaign be returned to the Clean Election Fund within one hundred (100) days after the date of the election.

The city council may adopt additional regulations and ordinances not inconsistent with this section

City of Portland, *Portland Charter Commission – Final Report: BALLOT QUESTION #3—Clean Elections*, https://content.civicplus.com/api/assets/ 42c7a724-1d31-4c4b-97aa-712a72400732?cache=1800 [https://perma.cc/ 5USS-NKZ8] (last visited Jan. 17, 2023). The same ballot question also proposed a new section 13 of the charter, which would adopt campaign finance rules for all candidates for municipal offices. *Id.*

[¶6] After voters approved the modification proposed by the Charter Commission (the Clean Election Fund) during the November 2022 election, we

issued an order requiring FEP to show cause why the matter pending before us should not be dismissed as moot. FEP contends that the case is not moot because the measure could still be considered by voters and given effect as written because the Clean Election Fund, which has now been adopted by voters, is not yet "valid and recognizable" and it is not identical to FEP's proposed charter modification. It also contends that even if the matter is moot, we should reach the merits under the exceptions to the mootness doctrine because the public has an interest in the stable and efficient administration of the Home Rule Act by municipal officers statewide, we have not yet conclusively resolved this important question of law, and by not reaching the merits of the matter the City of Portland's position will act as precedent that has the potential to be applied to other Maine charters and charter modifications.

## II. DISCUSSION

[¶7] As noted, FEP challenges the actions of the City of Portland determining that the voters' initiative promoted by FEP to establish a public financing mechanism for city elections would effectuate a revision to the Portland City Charter, rather than an amendment, and therefore declining to conduct a referendum vote on the proposed modification.

6

## A.      Mootness

[¶8]  Because FEP seeks a holding that its proposed charter modification was an amendment, rather than a revision, and should therefore be presented to the voters, and because in the November 2022 election voters approved a question on the ballot establishing a mechanism for public campaign financing that was proposed by the Charter Commission—the Clean Election Fund—the question of mootness necessarily hinges on the similarities and differences between these competing proposals.  If the Clean Election Fund is substantially similar to FEP's proposed charter modification, there is no real and substantial controversy, and this appeal is moot and therefore not justiciable.  *See Mainers for Fair Bear Hunting v. Dep't of Inland Fisheries & Wildlife*, 2016 ME 57, ¶¶ 5-6, 136 A.3d 714 ("An issue is moot when there remains no real and substantial controversy, admitting of specific relief through a judgment of conclusive character." (quotation marks omitted)).

### 1.      FEP's Proposed Charter Modification

[¶9]  FEP's proposed charter modification sought to add, as section 12 of the Portland City Charter, a requirement that the City Council "establish and fund a mechanism providing public campaign funds to qualified candidates for mayor, city council, and school board" that would provide "sufficient funds to

allow candidates who meet qualifying criteria to conduct competitive campaigns." The "qualifying criteria" required by FEP's proposed charter modification would include that the program: (1) "be voluntary"; (2) "limit the amount of private funds a candidate may raise"; (3) "only be available to candidates who demonstrate public support"; and (4) "be limited to candidates who enter into a binding agreement not to accept private contributions other than those allowed by the public funding program."

### 2. Clean Election Fund

[¶10] The Clean Election Fund accomplishes all of the same goals as FEP's proposed charter modification, with some additions. The Clean Election Fund, added as section 12 of the Portland City Charter, requires that the City Council "establish and *fully* fund a City of Portland Clean Election Fund . . . to provide public campaign funds to qualified candidates *for elected municipal offices.*" (Emphasis added.) The Clean Election Fund uses the phrase "elected municipal offices," which broadens the scope of the public funding mechanism from the "mayor, city council, and school board" positions proposed by FEP.

[¶11] The Clean Election Fund also clarifies the language around the funding mechanism. Whereas FEP's proposed charter modification would require the public campaign funding mechanism to "provide sufficient funds to

allow candidates . . . to conduct competitive campaigns," the Clean Election Fund is more specific and comprehensive, requiring that the City Council "fully fund" the Clean Election Fund by "provid[ing] an independent allocation from the city's budget each year to ensure the Clean Election Fund is *sustained at a level that facilitates competitive campaigns* for participating candidates" and, separately, that the City Council "appropriate *sufficient funds* to ensure there are adequate resources, including paid staff, to effectively administer the Fund." (Emphasis added.) The difference between *fully* funding and *sufficiently* funding the program is inconsequential because the outcome is the same—the establishment of a public campaign funding program that allows qualifying candidates to conduct competitive campaigns.

[¶12] Regarding qualifying criteria, the Clean Election Fund includes all of the same qualifying criteria as FEP's proposed charter modification: (1) that participation "be voluntary," (2) that "the amount of private funds a participating candidate may raise" be limited, (3) that the program be "limited to candidates who demonstrate public support," and (4) that the funds be available only to candidates who will "enter into a binding agreement stating that the candidate will not accept private contributions other than those which are permitted by the Clean Election Fund." However, the Clean Election Fund

goes further and requires that qualified candidates "agree to participate in at least one (1) city-sponsored forum or voter education event" and that "all unused funds . . . be returned to the Clean Election Fund." Finally, the Clean Election Fund includes language that allows the City Council to "adopt additional regulations and ordinances not inconsistent with [section 12]."

[¶13] In addition to the section 12 language, the ballot question approved by the voters added section 13 to the charter, which establishes campaign finance rules. City of Portland, *Portland Charter Commission – Final Report: BALLOT QUESTION #3—Clean Elections*, https://content.civicplus.com/api/assets/42c7a724-1d31-4c4b-97aa-712a72400732?cache=1800 [https://perma.cc/5USS-NKZ8] (last visited Jan. 17, 2023). Because these rules govern campaign contributions, spending, and reporting for all candidates, and are not exclusive to candidates using the Clean Election Fund established by section 12, the provisions of section 13 are of no consequence to our analysis.

## B. Conclusion

[¶14] Because the Clean Election Fund is substantially similar to FEP's proposed charter modification, with no conflicts, the issue on appeal is moot and therefore not justiciable. The requirement that the program be *fully* funded

under the Clean Election Fund, as opposed to *sufficiently* funded under FEP's proposed modification, ensures that the program not only meets but exceeds the funding requirements sought by FEP. FEP wanted a public campaign financing program for local elections, and it got one. The issue is moot.

[¶15] Further, there is no reason for us to hold that any of the exceptions to the mootness doctrine apply. Exceptions to the mootness doctrine apply when

> (1) sufficient collateral consequences will result from the determination of the questions presented so as to justify relief; (2) the appeal contains questions of great public concern that, in the interest of providing future guidance to the bar and public we may address; or (3) the issues are capable of repetition but evade review because of their fleeting or determinate nature.

*See Mainers for Fair Bear Hunting*, 2016 ME 57, ¶ 7, 136 A.3d 714 (quotation marks omitted). In its memorandum in response to the show cause order, FEP contends that all three exceptions apply, but it focuses on the public concern exception, arguing that we need to give guidance to municipalities regarding a standard to determine whether a measure is a revision or an amendment. We disagree. In *FEP I*, we thoroughly discussed the meaning of "revision" and "amendment" under the statute. 2021 ME 32, ¶¶ 28-34, 252 A.3d 504. We held that determining whether a proposed charter modification was an amendment

or a revision was a mixed question of fact and law, and that framework is more than adequate guidance for municipalities.  *Id.* ¶¶ 33-38.

The entry is:

Appeal dismissed.

---

Benjamin Gaines, Esq. (orally), Gaines Law, LLC, Portland, and John R. Brautigam, Esq., John R. Brautigam, Esq., LLC, Falmouth, for appellants Fair Elections Portland, Inc., and ten individual voters

Jen Thompson, Esq., and Amy R. McNally, Esq. (orally), City of Portland, Portland, for appellee City of Portland

Cumberland County Superior Court docket number AP-2021-32
FOR CLERK REFERENCE ONLY